# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **TAMARA SLIPCHENKO, DAVID R.** | ) | |
| **BOSWELL, and VALORIE BARTON** | ) | |
| on behalf of themselves, Individually, and | ) | |
| on behalf of all other persons similarly situated, | ) | |
| | ) | **Case No.: 4-11-cv-01465** |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **SECOND AMENDED** |
| | ) | **CLASS ACTION COMPLAINT** |
| **BRUNEL ENERGY, INC. and the** | ) | |
| **BRUNEL ENERGY GROUP HEALTH PLAN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

Plaintiffs Tamara Slipchenko, David R. Boswell, and Valorie Barton ("Plaintiffs"),

individually and on behalf of all other persons similarly situated, by and through their attorneys,

allege as follows:

## NATURE OF THE ACTION

1.      This is a civil enforcement action brought pursuant to sections 502(a)(1)(A),

(a)(1)(B), (a)(3), and (c)(1) of the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. §§ 1132(a)(1)(A), (a)(1)(B), (a)(3), and (c)(1) concerning the failure of

Brunel Energy, Inc. ("Brunel"), the plan sponsor of the Brunel Energy Group Health Plan

("Brunel Group Health Plan" or "the Plan"), to provide participants and beneficiaries in the

Brunel Group Health Plan with their right to elect continuation coverage under the Consolidated

Omnibus Budget Reconciliation Act of 1985 ("COBRA").  Because Brunel, as plan sponsor, did

not provide COBRA coverage to participants and beneficiaries in the Brunel Group Health Plan,

Brunel, as the Plan Administrator, and the Brunel Group Health Plan failed to provide the notices required by COBRA and the American Recovery and Reinvestment Act of 2009, as amended ("ARRA") informing participants and beneficiaries of their rights under those provisions of ERISA.  Further, Brunel, as an employer of persons covered by the Brunel Group Health Plan, did not notify the Brunel Group Health Plan Administrator (alleged here also to be Brunel) of the COBRA qualifying events described in sections §§ 603(1),(2), (4) and (6) of ERISA, 29 U.S.C. §§ 1163(1), (2), (4) and (6).

2.      Defendant Brunel's failure to provide COBRA coverage deprived Plaintiffs and the Class of necessary health coverage to which they were entitled by law.  The failure of Brunel and the Brunel Group Health Plan (administered by Brunel) to provide statutorily required COBRA notices prevented Plaintiffs and the Class from exercising their rights to COBRA coverage and made Brunel and the Brunel Group Health Plan liable to Plaintiffs and the Class for statutory penalties of up to $110 a day for each failure to give notice to a Brunel Group Health Plan participant or beneficiary (referred to in COBRA as covered employees and spouses and qualified beneficiaries depending on the nature of the notice obligation breached).

3.      Plaintiff Tamara Slipchenko was employed by Brunel from August 2008 until March 2010. Upon commencement of participation in the Plan, Brunel failed to provide Plaintiff Slipchenko the initial notice required by COBRA. When her employment with Brunel terminated, Slipchenko requested a package explaining her right to obtain COBRA continuation healthcare coverage.  She was informed by Brunel that such coverage was not available under the Brunel Group Health Plan for those employees and their beneficiaries who had elected the coverage provided by British United Provident Association Insurance Limited, of London, England (hereinafter, "BUPA" or "BUPA International" – described in more detail below).  A

few months later, Slipchenko was diagnosed with Hodgkin's lymphoma.  The only healthcare coverage she was able to obtain was through Health Net. Plaintiff Slipchenko filed a complaint with the United States Department of Labor under ARRA and was informed that she was eligible not only for COBRA continuation coverage but also for the premium reduction program available under ARRA.  Although the Department of Labor instructed Brunel to provide Slipchenko with a COBRA package that included her right to the premium reduction, Plaintiff Slipchenko did not receive such package, and was not offered any such coverage by Brunel or anyone acting on behalf of Brunel or the Brunel Group Health Plan, until June 2011, with just over a month of eligibility remaining.

4.     Plaintiff David R. Boswell was employed by Brunel from April 2007 until July 2010.  When he was employed with Brunel, Plaintiff Boswell was a participant in the BUPA health insurance plan, provided under the Brunel Group Health Plan.  When his participation in the Plan commenced, Brunel failed to provide Plaintiff Boswell the initial notice required by COBRA.  When his employment with Brunel terminated, Brunel failed to provide Plaintiff Boswell the notices required by COBRA and ARRA, explaining his right to obtain COBRA continuing healthcare coverage.  Plaintiff Boswell has received no such package, and has not been offered any such coverage by Brunel or anyone acting on behalf of Brunel or the Brunel Group Health Plan.

5.     Plaintiff Valorie Barton was employed by Brunel from November 2009 until November 2010.  When she was employed with Brunel, Plaintiff Barton was a participant in the BUPA International health insurance plan, provided under the Brunel Group Health Plan.  When her participation in the Plan commenced, Brunel failed to provide Plaintiff Barton the initial notice required by COBRA. When her employment with Brunel terminated, Brunel failed to

provide to Plaintiff Barton the notices required by COBRA and ARRA, explaining her right to

obtain COBRA continuing healthcare coverage.  Plaintiff Barton did not receive such notices,

and was not offered any such coverage by Brunel or anyone acting on behalf of Brunel or the

Brunel Group Health Plan until on or about June 2011.

6. Plaintiffs respectfully ask this Court to certify this case as a class action pursuant

to Rule 23 of the Federal Rules of Civil Procedure and for:  (1) an injunction  requiring Brunel to

allow qualified beneficiaries to elect COBRA coverage in the Brunel Health Plan; (2) an

injunction appointing an independent administrator to bring the Brunel Group Health Plan into

compliance with COBRA and ARRA and providing them with the ARRA subsidy where

appropriate; (3) a declaration that Plaintiffs and the Class are entitled to the benefits they would

have received had they been provided the opportunity to elect COBRA continuation coverage

during the Class period; and (4) statutory penalties against Brunel and the Brunel Group Health

Plan for the failure to provide the statutory notices required by COBRA and ARRA.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1331 and ERISA § 502(a), 29 U.S.C. § 1132(a).

8. This Court has personal jurisdiction over Defendants because Brunel and the

Brunel Group Health Plan transact business in, and have significant contacts with, this district,

and because ERISA provides for nationwide service of process.  *See* ERISA § 502(e)(2), 29

U.S.C. § 1132(e)(2).

9. Venue is proper in this Court pursuant to ERISA § 502(e)(2), 29 U.S.C. §

1132(e)(2), because:  (a)  Defendant Brunel is found in this district; (b) the Brunel Group Health

Plan is maintained and provides benefits to its participants and their beneficiaries in this district;

and (c) Plaintiffs were denied the right to elect COBRA continuation coverage and receive benefits from the Brunel Group Health Plan in this district.

<u>**PARTIES**</u>

10.     Plaintiff Tamara Slipchenko is an American citizen and a former employee of Brunel who was a participant in the Brunel Group Health Plan the day before she was terminated from employment with Brunel, a qualifying event within the meaning of  ERISA § 603(2), 29 U.S.C. § 1163(2) .  Accordingly, Slipchenko is and was a qualified beneficiary of the Plan within the meaning of ERISA § 607(3), 29 U.S.C. § 1167(3).  Because she has a colorable claim for benefits under the Brunel Group Health Plan, she continues to be a participant in the Plan pursuant to section 3(7) of ERISA, 29 U.S.C. § 1002(7).

11.     Plaintiff David R. Boswell is an American citizen and a former employee of Brunel who was a participant in the Brunel Group Health Plan the day before he was terminated from employment with Brunel, a qualifying event within the meaning of  ERISA § 603(2), 29 U.S.C. § 1163(2) .  Accordingly, Boswell is and was a qualified beneficiary of the Plan within the meaning of ERISA § 607(3), 29 U.S.C. § 1167(3).  Because he has a colorable claim for benefits under the Brunel Group Health Plan, he continues to be a participant in the Plan pursuant to section 3(7) of ERISA, 29 U.S.C. § 1002(7).

12.     Plaintiff Valorie Barton is an American citizen and a former employee of Brunel who was a participant in the Brunel Group Health Plan the day before her employment with Brunel terminated, a qualifying event within the meaning of  ERISA § 603(2), 29 U.S.C. § 1163(2).  Accordingly, Plaintiff Barton is and was a qualified beneficiary of the Plan within the meaning of ERISA § 607(3), 29 U.S.C. § 1167(3).  Because she has a colorable claim for

benefits under the Brunel Group Health Plan, she continues to be a participant in the Plan pursuant to section 3(7) of ERISA, 29 U.S.C. § 1002(7).

13.     Defendant Brunel Energy, Inc. is based in Houston, Texas and employed twenty or more employees on a typical business day in the 2008, 2009, 2010, and 2011 calendar years. Brunel Energy established and maintains the Brunel Group Health Plan and is the plan sponsor of the Plan within the meaning of ERISA §3(16)(B), 29 U.S.C. §1002(16)(B), and the administrator of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

14.     Defendant Brunel Group Health Plan provides medical benefits to employees of Brunel Energy and their beneficiaries directly or through insurance, reimbursement or otherwise and is an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1) and a group health plan within the meaning of ERISA § 607(1), 29 U.S.C. § 1167(1). The Brunel Group Health Plan is administered and maintained in Houston, Texas primarily for the benefit of American citizens and resident aliens, both in the United States and abroad.

**RELEVANT NON-PARTY**

15.     BUPA International ("BUPA") is a health insurance company located in Brighton, United Kingdom.  BUPA insurance coverage is a provider option under the Brunel Group Health Plan for Brunel employees who work overseas.  BUPA has an arrangement with United Healthcare ("United") through which participants and beneficiaries covered under the BUPA policy obtain medical treatment when they are in the United States.  BUPA has at all relevant times offered COBRA continuation coverage for those employers who chose to purchase such coverage from it; Defendant Brunel Energy chose not to purchase the offered coverage.

**CLASS ACTION ALLEGATIONS**

16.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following persons:

> **The Class:**  All employees of Brunel who elected coverage provided by BUPA together with their spouses and other covered dependents who were participants or beneficiaries in the Brunel Group Health Plan at any time from April 15**,** 2009 until the present.

17.     **Numerosity.**  The members of the Class are so numerous that joinder of all the Class members is impracticable.  On information and belief, the Class is comprised of more than 60 individuals who are or were participants or beneficiaries in the Brunel Group Health Plan since April 15, 2009 and who elected coverage under BUPA, all of whom are members of the Class.

18.     **Commonality.**  This case presents numerous common questions of law and fact. The following questions of law and fact are among those applicable to the members of the Class:

> a.     Whether the Brunel Group Health Plan is a group health plan within the meaning of ERISA § 607(1), 29 U.S.C. § 1167(1).
>
> b.     Whether Brunel failed to provide continuation coverage to participants of the Brunel Group Health Plan who elected coverage under BUPA.
>
> c.     Whether Brunel violated ERISA § 601, 29 U.S.C. § 1161, when it failed to provide continuation coverage to participants of the Brunel Group Health Plan who elected coverage under BUPA.
>
> d.     Whether Brunel, as the Brunel Group Health Plan Administrator, and the Brunel Group Health Plan violated the COBRA notice provisions of ERISA § 606 (a)(1) and (4), 29 U.S.C. § 1166 (a)(1) and (4).

e.    Whether members of the Class are entitled to statutory penalties under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), for the failure to give notice of COBRA and ARRA rights.

19.    **Typicality**.  Plaintiffs' claims are typical of the claims of the Class because they were participants in the Brunel Group Health Plan who elected coverage under BUPA, were entitled to notice of COBRA and ARRA rights, were entitled to elect COBRA coverage, including the ARRA subsidy, and are seeking enforcement of COBRA and ARRA rights on behalf of themselves and members of the Class.

20.    **Adequacy.**  Plaintiffs will fairly and adequately protect the interests of the members of the Class because of the following reasons:

a.    Plaintiffs have no interests antagonistic to or in conflict with the interest of the Class they seek to represent.

b.    Plaintiffs are willing to participate in and vigorously represent the interests of the Class they seek to represent.

c.    Plaintiffs have retained counsel to represent them and the Class and their counsel has significant experience prosecuting class actions in general and ERISA litigation specifically.

21.    **Rule 23(b)(1)(B).**  The requirements of Rule 23(b)(1)(B) are met in this action because prosecution of separate actions by the members of the Class would create a risk of adjudication with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members not parties to the actions, or substantially impair or impede the ability to protect their interests.

22.     **Rule 23(b)(1)(A).**  The requirements of Rule 23(b)(1)(A) are met in this action because the prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

23.     **Rule 23(b)(2)**.  The requirements of Rule 23(b)(2) are met in this action because Defendants have acted or refused to act on the grounds generally applicable to the Class, and final injunctive, declaratory and other appropriate relief with respect to the Class as a whole is appropriate.  As to the claims asserted pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the only available relief is equitable relief.

24.     **Rule 23(b)(3)**.  Additionally and alternatively, the requirements of Rule 23(b)(3) are met because the questions of law and/or fact set forth above are not only common, but will predominate over any individual questions in this action.  A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

## FACTUAL ALLEGATIONS

25.     Defendant Brunel Energy, headquartered in Houston, Texas, is a subsidiary of Brunel International N.V., a European based company and global service provider that specializes in human resources.  Brunel Energy supplies companies that are involved in the international oil and gas, petrochemical, power generation and construction industries with specialist personnel.  On information and belief, Brunel Energy employs approximately 4000 people within the United States and throughout the world.

26.     Defendant Brunel Energy enters into employment contracts with individuals whom it hires for various projects, but the employees work directly with the companies managing the projects for which they are hired.  When the project is completed, the employee is

generally terminated.  If the former employee is hired again for another project, the former

employee signs a new employment contract with Brunel Energy.

27.     During the Class Period, Defendant Brunel Energy provided its employees with

health care coverage both when they are working abroad and while working in the United States.

Brunel employees working outside of the United States were offered health care coverage

through BUPA International.  BUPA International reimbursed employees for medical services

provided outside of the United States and for network and non-network medical services

provided in the United States.  Brunel provided medical insurance for employees working in the

United States through PHCS PPO.  Brunel provided employees with a generic Certificate of

Coverage from BUPA that describes the benefits available under the BUPA International,but the

Certificate of Coverage did not make reference to the Brunel Group Health Plan or otherwise

meet the requirements of a Summary Plan Description as outlined in ERISA § 102, 29 U.S.C. §

1022.  Upon knowledge and belief, Defendant Brunel has never provided a Summary Plan

Description in compliance with ERISA to employees and their spouses covered by the BUPA

International Global Choice option under the Brunel Group Health Plan.

28.     Tamara Slipchenko was employed by Brunel as an Environmental and Regulatory

Advisor for Exxon/Mobil Development Company.  Her first employment contract was from July

31, 2008 until July 31, 2009.  Her second employment contract was from August 1, 2009 until

September 30, 2009.  Her third employment contract began on October 15, 2009, and terminated

on March 8, 2010 when she was laid off due to lack of work.

29.     Each time that Slipchenko signed, extended, or renewed her contract with Brunel,

she had an option to enroll or change her medical plan.  During the time period Slipchenko was

employed by Brunel, she participated in the Brunel Group Health Plan and received benefits

from the BUPA International Global Choice Plan B.  The only information that she received concerning her benefits was contained in a document entitled "Global Choice - Certificate of Coverage" which was issued by BUPA.  The "Global Choice - Certificate of Coverage" stated that "Global Choice is a group health insurance policy governed by a policy agreed between your enrolling group and BUPA International that provides you with coverage as part of your enrolling group's health benefits plan while you are a resident outside the United States (US)."

30.     Section 8 of the Certificate of Coverage is entitled "Coverage continuation and conversion."  Section 8.1 states that "[c]ontinuation coverage is a legal obligation that may be imposed on the enrolling group" and informs participants that "[y]our enrolling group may have arranged for BUPA to issue continuation coverage on the enrolling group's behalf under this policy or your continuation coverage may be offered through another of the enrolling group's benefit plans."  Section 8.1 further states that "[i]n no event shall BUPA be obligated to provide continuation coverage to a covered person if the enrolling group fails to perform its responsibilities related to continuation coverage under US law and under the policy."  Section 8.1 further advises covered persons to "contact the enrolling group's benefits administrator to determine if he or she is entitled to continue coverage and, if so, whether continuation coverage is offered through BUPA or through another insurer."  Finally, Section 8.1 informs participants that "[t]here may be other circumstances in which the enrolling group is required to arrange continuation coverage under another health plan.  You should contact the enrolling group for further details."  The remaining subsections of Section 8 list the circumstances under which a covered person might be eligible for continuing coverage.

31.     By letter dated March 11, 2010, DeEdra Bond-Hodrick, Brunel's Human Resources Manager, informed Slipchenko that, among other things, her BUPA coverage expired on March 8, 2010.  In fact, her coverage was valid until March 31, 2010.

32.     By letter dated March 15, 2010 from Slipchenko to Bond-Hodrick, Slipchenko requested a COBRA continuation coverage information package.  By email dated March 17, 2010 to Bond-Hodrick, Slipchenko again requested information about COBRA.

33.     By email dated March 18, 2010, Bond-Hodrick informed Slipchenko that "[u]nfortunately you were covered on our BUPA insurance plan and BUPA does not have COBRA coverage."  Bond-Hodrick provided Slipchenko with a list of companies that offered self insurance.

34.     Slipchenko was out of the country from September 2010 until November 2010. Worried about enlarged lymph nodes, Slipchenko moved to California where she lived prior to her employment with Brunel and saw a doctor there on November 19, 2010.  In December 2010, Slipchenko was diagnosed with Hodgkin's lymphoma.

35.     Slipchenko attempted to obtain insurance from Blue Shield of California in November 2010 but was denied coverage.

36.     Slipchenko was able to obtain group health insurance with Health Net through DM Consulting, a company that she had registered in California in 2006.

37.     On January 24, 2011, Slipchenko contacted the United States Department of Labor ("DOL") concerning her COBRA eligibility.  By letter dated February 10, 2011 addressed to Albert Johnson, U.S. Department of Labor, Employee Benefit Security Administration, Slipchenko outlined her situation, forwarded documentation regarding her employment with Brunel and BUPA health insurance coverage, and attached a form entitled "Information

submitted via e-file to U.S. Department of Labor for Expedited Review of Denial of COBRA Premium Reduction."

38.     By letter dated March 3, 2011 from Susan Hensley, Deputy Regional Director, Dallas Regional Office, U.S. Department of Labor, Employee Benefits Security Administration, the DOL informed Slipchenko that it had determined that she was eligible for COBRA premium assistance and that a copy of the determination letter would be mailed to her plan administrator notifying it that the plan should be providing her with ARRA COBRA premium reduction.

39.     By letter dated March 3, 2011, addressed to Plan Administrator, Brunel Energy, Hensley advised Brunel that Slipchenko was eligible for ARRA COBRA premium reduction and requested documentation demonstrating that Brunel had provided Slipchenko with the benefit no later than 10 business days from the date of the letter.

40.     Laura Calvazos, Brunel's Human Resources director, advised Albert Johnson that the previous Human Resources director, DeEdra Bond-Hodrick, had erroneously concluded that COBRA did not cover the participants receiving health coverage under the BUPA International Plan, but that Brunel now conceded that those participants were covered by COBRA.

41.     By letter dated April 18, 2011 from Mark Adler, Associate Regional Director, U.S. Department of Labor, Employee Benefits Security Administration, to Brunel, the DOL noted that despite the issuance of the DOL's determination letter to Brunel regarding Slipchenko's eligibility for the ARRA COBRA premium reduction, Brunel still failed to provide confirmation that it provided COBRA notification to Slipchenko as instructed.  Thus, Adler advised Brunel that its failure to comply with obligations under COBRA or the ARRA premium reduction requirements "may subject a plan sponsor to excise taxes and, in the case of a failure to provide required notices, to a daily civil penalty."

42.     By correspondence dated June 15, 2011 from VeriSource Services, Inc. for Brunel Energy, Inc., Brunel informed Slipchenko that "[a]ccording to [Brunel's] records, [Slipchenko] incurred a COBRA Qualifying Event on March 8, 2010; however, an opportunity for [Slipchenko] to enroll for COBRA Continuation was not provided to [Slipchenko] at that time."

43.     Through the same correspondence dated June 15, 2011, Brunel also finally provided Slipchenko with the opportunity to enroll for COBRA continuation coverage – more than three months after Brunel was instructed to provide such coverage by the Department of Labor.  At the time Brunel offered such coverage to Slipchenko, she had just over a month of eligibility remaining.

44.     David Boswell was employed by Brunel as an Offshore Installation Technical Foreman.  His first employment contract was from March 1, 2007 until on or about August 2008.  His second employment contract was from August 20, 2008 until March 31, 2009.  His third employment contract began on or about December 2009 and terminated in July 2010 when he was laid off due to lack of work.

45.     Each time that Boswell signed, extended, or renewed his contract with Brunel, he had an option to enroll or change his medical plan.  During the time period Boswell was employed by Brunel, he participated in the Brunel Group Health Plan and received benefits from BUPA International. Brunel never provided Plaintiff Boswell the notices required by COBRA and ARRA, explaining his right to obtain COBRA continuing healthcare coverage.

46.     Valorie Barton was employed by Brunel as a Contract Administrator for ExxonMobil Global Services Company.  Her employment contract was from November 2009 until November 2010, when it ended due to lack of work.

14

47.     Each time that Barton signed, extended, or renewed her contract with Brunel, she had an option to enroll or change her medical plan.  During the time period Barton was employed by Brunel, she participated in the Brunel Group Health Plan and received benefits from BUPA International.  When her employment with Brunel terminated, Brunel failed to provide to Plaintiff Barton the notices required by COBRA and ARRA.  Plaintiff Barton did not receive such package, and was not offered any such coverage by Brunel or anyone acting on behalf of Brunel or the Brunel Group Health Plan, until more than nine months after termination of her employment with Brunel.

## COUNT I

## (VIOLATION OF ERISA § 601)

48.     Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

49.     ERISA § 601, 29 U.S.C. § 1161, requires a plan sponsor of a group health plan to provide, in accordance with part 6 of Title I of ERISA, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within an election period, continuation coverage under the plan.

50.     Brunel, as the Brunel Group Health Plan sponsor, failed to provide COBRA coverage to its employees and, therefore, violated ERISA § 601, 29 U.S.C. § 1161, by failing to provide, in accordance with part 6 of Title I of ERISA, that each qualified beneficiary who would lose coverage under the Brunel Group Health Plan as a result of a qualifying event is entitled, under the plan, to elect, within an election period, continuation coverage under the plan.

## COUNT II

## (VIOLATION OF ERISA § 606(a)(1))

51.     Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

52.     ERISA § 606(a)(1), 29 U.S.C. § 1166(a)(1), requires a group health plan, at the time of commencement of coverage under the plan, to provide written notice to each covered employee and spouse of the employee (if any) of their rights under COBRA.  Pursuant to 29 C.F.R. § 2590.606-1(a), the plan administrator is required to provide this notice.

53.     Defendant Brunel, as the Brunel Group Health Plan Administrator, and Defendant Brunel Group Health Plan failed to provide, at the commencement of coverage under the Plan, written notice to each covered employee and spouse of the employee (if any) with their rights under COBRA in violation of ERISA § 606(a)(1), 29 U.S.C. § 1166(a)(1).   Because they were not advised of their COBRA rights, covered employees and qualified beneficiaries did not have notice, among other things, that they were responsible under ERISA § 606(a)(3), 29 U.S.C. § 1166(a)(3), for notifying the Plan Administrator of the occurrence of qualifying events described in ERISA § 603(3) and/or (5), 29 U.S.C. § 1163(3) and/or (5).

## COUNT III

## (VIOLATION OF ERISA § 606(a)(2) and (4))

54.     Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

55.     ERISA § 606(a)(2), 29 U.S.C. § 1166(a)(2), requires an employer of an employee under a group health plan to notify the administrator of qualifying events described in paragraph (1), (2), (4), or (6) of ERISA § 603, 29 U.S.C. § 1163, within 30 days of the of the date of the qualifying event.

56.     ERISA § 606(a)(4), 29 U.S.C. § 1166(a)(4), requires an administrator of a group health plan, at the time of a qualifying event, to notify any qualified beneficiary of the beneficiary's right to elect COBRA coverage.

57.     Defendant Brunel was both the employer of employees under the Brunel Group Health Plan and the Brunel Group Health Plan Administrator.  Defendant Brunel, as the Brunel Group Health Plan Administrator, was aware of qualifying events described in paragraph (1), (2), (4), and/or (6) of ERISA § 603, 29 U.S.C. § 1163, and, therefore, had a duty to notify any qualified beneficiary of his or her right to elect COBRA coverage as required by ERISA § 606(a)(4), 29 U.S.C. § 1166(a)(4).

58.     Defendant Brunel, as the Brunel Group Health Plan Administrator, failed to provide, at the time of qualifying events, written notice to qualified beneficiaries of their rights under the COBRA provisions of ERISA in violation of ERISA § 606(a)(4), 29 U.S.C. § 1166(a)(4).

## COUNT IV

## (VIOLATION OF ARRA § 3001(a))

59.     Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

60.     Section 3001(a)(1)(A) of ARRA, Pub. L. No. 111-5, § 3001(a)(1)(A), 123 Stat. 115, 455 (February 17, 2009), requires that group health plans offer assistance eligible individuals a premium reduction of 65 percent of the amount the assistance eligible individual would pay for COBRA continuation coverage following involuntary termination of employment occurring from September 1, 2008 through December 31, 2009.  ARRA was amended by section 1010 of the Department of Defense Appropriations Act ("DOD Act"), Pub. L. No 111-118, §

1010, 123 Stat. 3409, 3472-3473 (December 19, 2009), which extended the subsidy program to include involuntary terminations of employment occurring through February 28, 2010 and increased the duration of the subsidy from 9 to 15 months.  ARRA was again amended by section 3 of the Temporary Extension Act of 2010 ("TEA"), Pub. L. No. 111-144, § 3, 124 Stat. 42, 43-45 (March 2, 2010), which extended the subsidy program to include involuntary terminations of employment occurring before March 31, 2010; and by section 3 of the Continuing Extension Act of 2010 ("CEA"), Pub. L. No. 111-157, § 3, 124 Stat. 1116, 1117 (Apr. 15, 2010), which extended the subsidy program to include involuntary terminations of employment occurring from March 31, 2010 until May 31, 2010.

61.     Defendant Brunel, as the Brunel Group Health Plan sponsor, failed to offer assistance eligible individuals an opportunity to elect COBRA continuation coverage and, therefore, failed to offer such assistance eligible individuals a premium reduction in violation of ARRA § 3001(a), as amended by the DOD Act, TEA and CEA.

## COUNT V

## (VIOLATION OF ARRA § 3001(a)(7)(A), (B) and (C))

62.     Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

63.     ARRA § 3001(a)(7)(A), (B) and (C), Pub. L. No. 111-5, § 3001(a)(7)(A-C), 123 Stat. 115, 458-460 (February 17, 2009), requires that the notice provided under ERISA § 606(a)(4) by plan administrators to persons eligible to receive the 65 percent premium reduction include notification of the availability of the premium reduction.  ARRA further requires plan administrators to notify certain assistance eligible individuals that they have an extended period of time in which to elect COBRA coverage subject to the 65 percent premium

reductions.  The DOD Act, TEA and CEA each required plan administrators to provide additional notices to assistance eligible individuals of the availability of the 65 percent premium reduction.

64.     Defendant Brunel, as Administrator of the Brunel Group Health Plan, failed to give notice to assistance eligible individuals that they had an opportunity to elect COBRA continuation coverage and, therefore, also failed to notify such assistance eligible individuals that they were eligible for the 65 percent premium reduction and that the period to elect COBRA coverage had been extended in violation of ARRA § 3001(a)(7)(A)(i), as amended.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants on each Count of the Complaint and the following relief:

(1)     An injunction requiring:

(a)     Defendant Brunel, as the Brunel Group Health Plan sponsor, to amend the Brunel Group Health Plan to comply with COBRA;

(b)     Defendant Brunel, as the Brunel Group Health Plan Administrator, to allow members of the Class to elect COBRA coverage at the ARRA reduced rate retroactive to their eligibility date;

(c)     The appointment of an independent administrator to administer COBRA benefits under the Brunel Group Health Plan;

(d)     Defendant Brunel, as the Brunel Group Health Plan Administrator, and Defendant Brunel Group Health Plan, to provide each covered employee and spouse of the covered employee with written notice of the rights provided under COBRA as required by ERISA § 606(a)(1), 29 U.S.C. § 1166(a)(1);

(e)     Defendant Brunel, as the employer of employees covered under the Brunel Group Health Plan, to provide the Brunel Plan Administrator with notice of any qualifying event that occurred during the Class period as required by ERISA § 606(a)(2), 29 U.S.C. § 1166(a)(1);

(f)     Defendant Brunel, as the Brunel Group Health Plan Administrator, to provide notice to each current employee and each qualified beneficiary during the Class period of the right to notify the Brunel Plan Administrator of any qualifying event described in ERISA § 603(3) and (5), 29 U.S.C. § 1163(3) and (5); and

(g)     Defendant Brunel, as the Brunel Group Health Plan Administrator, to provide the notice required by ERISA § 606(a)(4), 29 U.S.C. § 1166(a)(4), to each qualified beneficiary during the Class period of the rights provided under COBRA.

(2)     A declaration that Plaintiffs and the Class are entitled to the benefits they would have received had they been provided the opportunity to elect COBRA coverage during the Class Period.

(3)     An order requiring Defendant Brunel, as the Brunel Group Health Plan Administrator, to pay penalties of $110 per day to:

(a)     each covered employee and spouse of such employee from April 15, 2009 until the present for the failure to provide the notice required by ERISA § 606(a)(1), 29 U.S.C. § 1166(a)(1); and

(b)     each qualified beneficiary from the date notice was required of a qualifying event, beginning on or after April 15, 2009, until the present under ERISA § 606(a)(4), 29 U.S.C. § 1166(a)(4).

(4)     The cost of the suit, including attorneys' fees under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), and this Court's inherent equitable authority and powers.

(5)     Pre-judgment and post-judgment interest.

(6)     Other such and further relief as the Court deems appropriate.

DATED:  June 10, 2013                    Respectfully submitted,


   /s/   Monya M. Bunch       
Karen L. Handorf (Pro Hac Vice)
Attorney in Charge
State Bar No. (Wis.) 1017039
Federal Bar No. (D.D.C) 491895
Monya M. Bunch (Pro Hac Vice)
State Bar No. (N.Y.) 660473
Federal Bar. No. (D.D.C.) 489855

**COHEN, MILSTEIN, SELLERS
& TOLL, PLLC**
1100 New York Avenue, NW
West Tower, Suite 500
Washington, DC 20005-3934
(202) 408-4600 Telephone
(202) 408-4699 Facsimile
Khandorf@cohenmilstein.com
Mbunch@cohenmilstein.com


OF COUNSEL:

Justin M. Campbell, III
State Bar No. 03721500
Federal Bar No. 2988
Kenneth J. Fair
State Bar No. 24007171
**Campbell, Harrison & Dagley, LLP**
4000 Two Houston Center
909 Fannin Street
Houston, TX  77010
(713) 752-2332 Telephone
(713) 752-2330 Facsimile

*Attorneys for Plaintiffs*