**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TAMARA SLIPCHENKO, on behalf | § | |
| of herself and all other persons | § | |
| similarly situated, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-1465 |
| | § | |
| BRUNEL ENERGY, INC., *et al.*, | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

The plaintiffs, Tamara Slipchenko, David R. Boswell, and Valorie Barton,[1] worked for

Brunel Energy, Inc., a Houston-based energy company that is a subsidiary of Brunel International

N.V. (together, "Brunel").  The plaintiffs sued Brunel on behalf of themselves and similarly situated

present and former employees, alleging that Brunel failed to provide required notices of their right

to continued health care coverage under the Consolidated Omnibus Budget Reconciliation Act of

("COBRA") and to premium reduction under the American Recovery and Reinvestment Act of 2009

("ARRA").  In their second amended complaint, the plaintiffs allege violations of the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1166(a)(1), (a)(2), and (a)(4), and of the

ARRA, Pub. L. No. 111-5, § 3001(a)(1)(A), (a)(7)(A), (B), (C), 123 Stat. 115, 455, 458–60 (codified

as amended at 26 U.S.C. § 6432).

The plaintiffs moved for class certification under Rule 23.  (Docket Entries No. 54, 55).

---

[1] The plaintiffs' initial complaint, (Docket Entry No. 1), named Tamara Slipchenko as the representative plaintiff.  The plaintiffs later filed an amended complaint, (Docket Entry No. 36), adding David R. Boswell as a representative plaintiff.  The plaintiffs filed a motion for leave to amend to add Valorie Barton as a named plaintiff, (Docket Entries No. 50, 51).  This court granted the plaintiffs' motion to amend, (Docket Entry No. 82).  A second amended complaint names the three plaintiffs as class representatives, (Docket Entry No. 83).

They defined the proposed class as Brunel employees "who elected coverage provided by British United Provident Association Limited ("BUPA"), together with their spouses and other covered dependents who were participants or beneficiaries in the Brunel Group Health Plan at any time from April 15, 2009 until the present."  (Docket Entry No. 55, at 1).  Three categories of claims are at issue.  The first is claims based on Brunel's alleged failure to provide the initial COBRA notice.  The second is claims based on Brunel's alleged failure to provide notice and benefits after an employee has a "qualifying event."  The third is claims based on Brunel's alleged failure to provide notice of rights and payment-reduction benefits under the ARRA.

Brunel responded opposing certification.  (Docket Entries No. 60, 61, 65).  After the discovery deadline, the plaintiffs also moved for summary judgment, which Brunel opposed. (Docket Entries No. 71, 72, 78, 80).

Based on the pleadings; the motions, responses, replies, and surreplies; the records; and the applicable law, the plaintiffs' motion for summary judgment is granted in part and denied in part. Specifically, the plaintiffs' motion for summary judgment is:

- denied as to Boswell;

- granted for the remaining plaintiffs as to Brunel's liability for failing to provide initial notice;

- granted for Barton as to Brunel's liability for failing to provide notice and benefits after a qualifying event; and

- denied in all other respects

The plaintiffs' motion for class certification is granted in part and denied in part.  The following class is certified under Rule 23(b)(3): All employees of Brunel who elected coverage

2

provided by British United Provident Association Limited ("BUPA"), together with their spouses and other covered dependents who were participants or beneficiaries in the Brunel Group Health Plan at any time from April 15, 2009 until the present.  The following issues are certified for class treatment:

- Brunel's liability for failure to provide COBRA initial notice;

- Brunel's liability for failure to provide notice and benefits following a qualifying event; and

- Brunel's conduct and intent toward the class as a whole in committing the alleged statutory violations.

The named plaintiffs are appointed as class representatives.  A status and scheduling conference is set for **September 16, 2013**, at 10:00 a.m. in Courtroom 11-B.

The reasons for these rulings are explained below.

## I.    Background

### A.    The Claims

Brunel's clients are companies that have projects requiring individuals with specialized knowledge for relatively short periods.  Brunel places such individuals with its client companies to work on specific projects.  Brunel enters into short-term employment contracts with the individuals it hires for its clients' projects, but the employees work directly with the clients.  When the project is finished, the individual's employment with Brunel is usually terminated.  If the same individual is hired to work on another project, Brunel and the individual enter into a new employment contract. (Docket Entry No. 83, at 9–10).

During their employment with Brunel, the plaintiffs were insured under the Brunel Group

Health Plan (the "Plan") and elected coverage under BUPA. (*Id.* at 5). They allege that Brunel failed to provide them and other similarly situated employees with notice of their right to elect COBRA coverage when they first began participating in the Plan; failed to provide notice of their right to continue coverage when their employment was terminated, which the plaintiffs argue was an event qualifying them for continued COBRA coverage; failed to offer a premium reduction to eligible individuals; and failed to notify employees of their eligibility for premium reduction. (*Id.* at 15–19).

COBRA gives workers who lose health coverage due to a qualifying event the opportunity to elect continued coverage from their group health plan for a limited time. *See* 29 U.S.C. §§ 1161, 1166. COBRA requires an employer to notify an eligible employee twice: first, when the employee begins participating in a group health plan; and second, when the employee notifies the employer that a qualifying event has occurred. *Id.* The ARRA provides eligible individuals with a right to reduced premium payments for healthcare coverage they receive through COBRA. *See* Pub. L. No. 111-5, § 3001(a)(1)(A), 123 Stat. 115, 455 (codified as amended at 26 U.S.C. § 6432).[2] The ARRA also requires an employer to notify an eligible employee of this right when he or she is notified of the right to elect continued coverage under COBRA after a qualifying event. *See* Pub. L. No. 111-5, § 3001(a)(7)(A)(I), 123 Stat. 115, 458–59 (codified as amended at 26 U.S.C. § 6432).

In their second amended complaint, (Docket Entry No. 83), the plaintiffs sought class certification to obtain the following relief:

---

[2] Section 3001(a) of the ARRA was amended by § 1010 of the Department of Defense Appropriations Act, Pub. L. No 111-118, § 1010, 123 Stat. 3409, 3472–73 (2009); § 3 of the Temporary Extension Act of 2010, Pub. L. No. 111-144, § 3, 124 Stat. 42, 43–45 (2010); and § 3 of the Continuing Extension Act of 2010, Pub. L. No. 111-157, § 3, 124 Stat. 1116, 1117 (2010), to extend eligibility for the premium reduction program to involuntary terminations that occurred before May 31, 2010.

(1)  an injunction requiring Brunel to allow qualified beneficiaries to elect COBRA coverage in the Brunel Health Plan; (2) an injunction appointing an independent administrator to bring the Brunel Group Health Plan into compliance with COBRA and ARRA and providing them with the ARRA subsidy where appropriate; (3) a declaration that Plaintiffs and the Class are entitled to the benefits they would have received had they been provided the opportunity to elect COBRA continuation coverage during the Class period; and (4) statutory penalties against Brunel and the Brunel Group Health Plan for the failure to provide the statutory notices required by COBRA and ARRA.

(Docket Entry No. 83, at 4).  The plaintiffs also sought attorneys' fees and prejudgment and postjudgment interest.  (*Id*. at 20).

### B.    The Named Plaintiffs

#### 1.    Tamara Slipchenko

Brunel employed Tamara Slipchenko from August 2008 until March 2010.  She worked as an Environmental and Regulatory Advisor at Exxon/Mobil Development Company.  During her Brunel employment, she received health coverage under the Plan.  (*Id*. at 10).  Brunel alleges that it fired Slipchenko based on its belief that she had received reimbursements she was not entitled to and then refused to return the overpaid amount.  When Slipchenko's employment was terminated, she asked Brunel for information about COBRA.  In response, Brunel told her that employees who elected coverage under BUPA were not eligible for COBRA coverage.  (*Id*. at 11–12).

In December 2010, Slipchenko was diagnosed with Hodgkin's lymphoma requiring medical treatment.  (*Id*. at 12).  At some point after Brunel fired her, Slipchenko was able to get health coverage from another insurance company, Health Net.  (*Id*.).  In February 2011, Slipchenko contacted the Department of Labor about her COBRA eligibility and was told that because Brunel had terminated her employment, she was eligible for both continued coverage and for premium reduction under the ARRA.  (*Id*. at 12–13).  The Department of Labor sent Brunel a letter dated

5

March 3, 2011 directing it to provide Slipchenko with a COBRA package within 10 days.  (*Id*. at 13).  Brunel initially failed to comply.  Approximately three months later, with one month of eligibility left, Brunel offered Slipchenko COBRA coverage.  (*Id*. at 14).

In this lawsuit, Slipchenko alleges that Brunel failed to provide her initial notice of her COBRA rights when she began participating in the Plan in August 2008 and failed to give her notice of her COBRA and ARRA rights when her employment ended in March 2010.  (*Id*. at 10–11).

### 2.       David R. Boswell

David R. Boswell was employed by Brunel from March 2007 to July 2010 as an Offshore Installation Technical Foreman.  He received health coverage under BUPA.  (*Id*. at 14).  Boswell was apparently insured under a different plan than the other potential class members.  He was covered by the BUPA Gold Plan, and was the only Brunel-employed American citizen covered by that plan.  (Docket Entry No. 60, at 7 (citing Ex. 1, Decl. of Bob Glover, Gen. Mgr. — Am., Brunel Energy, Inc.)).  Boswell alleges that Brunel failed to provide him with an initial notice of his COBRA rights and with a notice of his right to continued coverage under COBRA once his employment was terminated.  (Docket Entry No. 83, at 14).  Boswell's employment was terminated after the May 31, 2010 deadline for ARRA coverage.[3]

### 3.       Valorie Barton

Valorie Barton was employed by Brunel from November 2009 to November 2010 as a Contract Administrator at Exxon/Mobil Global Services Company.  She received health coverage under BUPA.  (*Id*.).  Barton alleges that Brunel failed to provide her with an initial notice of her COBRA rights and with notice of her right to continued coverage once her employment was

---

[3] *See supra* n.2.

terminated.  (*Id*. at 14–15).  She alleges that Brunel did not offer her a COBRA package until over

nine months after it terminated her employment.  (*Id*. at 15).  Her employment ended after the May

31, 2010 deadline for ARRA coverage.[4]

## II.     The Legal Standard for Class Certification

To certify a class under Rule 23, plaintiffs must show that their proposed class meets the

requirements of Rule 23(a) and the requirements of at least one Rule 23(b) subsection.  *See* FED. R.

CIV. P. 23.  The plaintiffs seek certification under Rule 23(b)(1), (b)(2), or (b)(3).  (Docket Entry

No. 55, at 1).

Before granting certification, a court must conduct a rigorous analysis to determine whether

the plaintiffs have met the Rule 23 requirements.  *Benavides v. Chi. Title Ins. Co.*, 636 F.3d 699, 701

(5th Cir. 2011); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).  "Frequently that

rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim.  That

cannot be helped.  The class determination generally involves considerations that are enmeshed in

the factual and legal issues comprising the plaintiff's cause of action."  *Wal-Mart Stores, Inc. v.

Dukes*, — U.S. —, 131 S. Ct. 2541, 2551–52 (2011) (alterations, citations, and internal quotation

marks omitted); *see also Castano*, 84 F.3d at 744 ("Going beyond the pleadings is necessary, as a

court must understand the claims, defenses, relevant facts, and applicable substantive law in order

to make a meaningful determination of the certification issues.").  The certification issue is not

whether the plaintiffs will ultimately prevail on the merits of their claims.  The certification ruling

does not turn on the strengths and weaknesses of the claims and defenses.  Rather, the court must

examine the issues and the evidence that will be used to establish the claims and defenses to

---

[4]  *See supra* n.2.

determine that the issues can be resolved and the evidence can be presented on a class-wide basis.

FED. R. CIV. P. 23(c)(1) committee n. (2003).  The party seeking certification bears the burden of

showing that the Rule 23 requirements are satisfied.  *Comcast Corp. v. Behrend*, — U.S. —, 133 S.

Ct. 1426, 1432 (2013); *Erica P. John Fund, Inc. v. Halliburton Co.*, 718 F.3d 423, 428 (5th Cir.

2013) (citing *Wal-Mart*, 131 S. Ct. at 2551), *aff'g Archdiocese of Milwaukee Supporting Fund, Inc.

v. Halliburton Co.*, 2012 WL 565997 (N.D. Tex. Jan. 27, 2012), *on remand from Erica P. John

Fund, Inc. v. Halliburton Co.*, — U.S. —, 131 S. Ct. 2179 (2011); *Benavides*, 636 F.3d at 701;

*Allison*, 151 F.3d at 408; *Castano*, 84 F.3d at 740.

## III.   Analysis

### A.   Rule 23(a)

The threshold question is whether the proposed class meets the four Rule 23(a) requirements:

> (a)   Prerequisites.  One or more members of a class may sue or be sued
> as representative parties on behalf of all members only if:
>> (1)   the class is so numerous that joinder of all members
>> is impracticable;
>> (2)   there are questions of law or fact common to the class;
>> (3)   the claims or defenses of the representative parties are
>> typical of the claims or defenses of the class; and
>> (4)   the representative parties will fairly and adequately
>> protect the interests of the class.

FED. R. CIV. P. 23(a).

### 1.   Numerosity

There must be so many members in the proposed class that "joinder of all members is

impracticable." FED. R. CIV. P. 23(a)(1). "'[A] plaintiff must ordinarily demonstrate some evidence

or reasonable estimate of the number of purported class members." *Pederson v. La. State Univ.*, 213

F.3d 858, 868 (5th Cir. 2000) (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038

(5th Cir. 1981)).  There is no bright-line or hard-and-fast rule as to how many putative class members is enough.  In some jurisdictions, numerosity is presumed satisfied if there are 40 or more members.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members . . . ."); *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) ("[G]enerally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." (citation and internal quotation marks omitted)); *Humphrey v. United Way of Tex. Gulf Coast*, 2007 WL 2330933, at *4 (S.D. Tex. Aug. 14, 2007) ("Generally, a class size of more than forty members satisfies the numerosity requirement.").  A larger number may fail the numerosity requirement if joining them all is practicable.  *See, e.g.*, *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (holding that the district court's denial of certification for a class of 84 members was an "appropriate judgment call" and not an abuse of discretion).  "'[A] party seeking class certification must . . . be prepared to prove that there are *in fact* sufficiently numerous parties. . . .' Mere speculation as to the number of class members — even if such speculation is 'a bet worth making' — cannot support a finding of numerosity."  *Hayes v. Wal-Mart Stores, Inc.*, — F.3d —, 2013 WL 3957757, at *5 (3d Cir. 2013) (quoting *Wal-Mart,* 131 S. Ct. at 2551; *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 596 (3d Cir. 2012)).

The plaintiffs' proposed class consists of Brunel employees who participated in the Plan and received healthcare coverage under BUPA beginning in April 2009.  (Docket Entry No. 55, at 1).  In their class certification motion, the plaintiffs estimated the proposed class to "consist of at least 50 members."  (*Id.* at 8).  Brunel presented evidence that 67 individuals, including employees, independent contractors, and their dependants, have been covered by BUPA since April 2009.

(Docket Entry No. 60, at 5).  This is obviously more than 40.

The crux of the numerosity requirement is that joinder be impracticable.  The putative class members are readily identifiable from Brunel's records.  As noted, the Brunel employees who received BUPA healthcare coverage during the relevant period have three categories of claims.  As to the first category, there are 67 individuals whose claims are based on a failure to provide the initial notice of COBRA rights, according to the records the plaintiffs rely on.  As to the second category, there are fewer than 30 individuals who can assert that they also failed to receive the notice and COBRA benefits required after a qualifying event.  And as to the third category, on the present record, only Slipchenko appears to have a claim that she did not receive the notice of eligibility for premium reduction.

Joinder is not practicable as to the approximately 67 individuals asserting that Brunel failed to send the initial notice of COBRA rights.  Brunel's records show that these approximately 67 individuals are geographically dispersed, including in different countries.  (*See* Docket Entry No. 60, Ex. 1, Brunel BUPA Spreadsheet).  The number, geographic dispersion of the potential class members, and difficulty in effecting service in multiple countries make joinder impracticable.  *See, e.g.*, *Simms v. Jones*, — F.R.D. —, 2013 WL 3449538, at \*6 (N.D. Tex. July 9, 2013) ("To make [the numerosity] determination, courts turn to several factors, including 'size of the class, ease of identifying members and determining their addresses, facility of making service on them if joined and their geographic dispersion.'" (quoting *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980))); *McWaters v. Fed. Emergency Mgmt. Agency*, 237 F.R.D. 155, 162 (E.D. La. 2006) ("[T]aking into account of a reasonable estimate of the number of purported class members, their geographical dispersion, and the ease with which they may be identified, the class is so numerous that joinder of

all plaintiffs is impracticable." (citing *Zeidman*, 651 F.2d at 1038)).  Of this group of 67, 20 to 30 individuals can also allege that they were entitled to additional notice and COBRA benefits after qualifying events. Any individuals who could assert a claim based on ARRA premium reductions are also in the first group of 67.[5]  That is, those who could assert the second and third categories of claims are subsets of those who might assert the first category of claims.  As noted, joinder is impracticable for these putative class members.

The plaintiffs have shown that Rule 23(a)(1) is satisfied.

### 2.      Commonality and Typicality

Under Rule 23(a), the plaintiffs must demonstrate that "there are questions of law or fact common to the class" and "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  FED. R. CIV. P. 23(a)(2)–(3).  Both typicality and commonality "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Commonality requires the plaintiffs "to demonstrate that the class members 'have suffered the same injury.'"  *Wal-Mart*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 156).  "That common contention, moreover, must be of such a nature that it is capable of class-wide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of

---

[5] As noted, on the present record, it appears that Slipchenko is the only individual among the putative class members with such claims.  Such a claim would require a qualifying event that consisted of termination of employment during the period covered by the ARRA.  To the extent there are individuals with additional claims, the number of such individuals is so small — far fewer than the 20 to 30 individuals who experienced a qualifying event of any type — that disputed issues about their claims can be resolved on an individual basis.

the claims in one stroke." *Id.*

Under the Supreme Court's decision in *Wal–Mart*, "Rule 23(a)(2)'s commonality requirement demands more than the presentation of questions that are common to the class because 'any competently crafted class complaint literally raises common questions.'" *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) (quoting *Wal-Mart*, 131 S. Ct. at 2551). "[T]he members of a proposed class do not establish that 'their claims can productively be litigated at once,' merely by alleging a violation of the same legal provision by the same defendant . . . ." *Id.* (quoting *Wal-Mart*, 131 S. Ct. at 2551). "Thus, the commonality test is no longer met when the proposed class merely establishes that there is at least one issue whose resolution will affect all or a significant number of the putative class members." *Id.* (emphasis, citation, and internal quotation marks omitted). "Rather, Rule 23(a)(2) requires that all of the class member's claims depend on a common issue of law or fact whose resolution will resolve an issue that is central to the validity of each one of the class member's claims in one stroke." *Id.* (alteration, emphasis, citation, and internal quotation marks omitted).

The plaintiffs' claim that Brunel violated ERISA by failing to provide initial notice of their COBRA rights is common to all potential class members. Other ERISA claims are limited to the putative class members who experienced a qualifying event. Brunel presents competent evidence showing that only 22 of the 67 proposed class members experienced an event qualifying them for continued coverage under COBRA and requiring a second notice of COBRA rights. (Docket Entry No. 60, at 5). The plaintiffs allege that 26 members of the proposed class experienced a qualifying event during the relevant period. (Docket Entry No. 61, at 7). Even assuming that 26 — not 22 — employees experienced a qualifying event, that means that approximately half the potential class

12

members do not have a claim that depends on such an event.  But commonality does not require that all claims be common to all class members.  One common claim is enough.  *See, e.g.*, *Simms*, 2013 WL 3449538, at *6 (explaining that "a single common question of law or fact can suffice" to satisfy commonality (citing *Wal-Mart*, 131 S. Ct. at 2556)).[6]

The initial-notice claim is common to all 67 putative class members and is capable of class-wide resolution.  The qualifying-event notice claim is common to a subset of the larger group and is similarly capable of class-wide resolution.  The proposed class meets the commonality requirement of Rule 23(a)(2) as to these two categories of claims.

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."   FED. R. CIV. P. 23(a)(3).  "The typicality requirement focuses less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of the legal and remedial theories behind their claims."  *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 297 n.32 (5th Cir. 2001) (quoting *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986)) (internal quotation marks omitted); *see also Woodard v. Andrus*, 272 F.R.D. 185, 191 (W.D. La. 2010) ("The test for typicality is not demanding and it focuses on the general similarity of the legal and remedial theories behind the plaintiffs' claims." (citing *Shipes v.*

---

[6] *See also LaBauve v. Olin Corp.*, 231 F.R.D. 632, 668 (S.D. Ala. 2005) ("'[I]t is not necessary that all of the questions raised by arguments are identical; it is sufficient if a single common issue is shared by the class.'" (quoting *Weiss v. La Suisse*, 226 F.R.D. 446, 449 (S.D.N.Y. 2005))); *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 562 (S.D.N.Y. 2004) ("[T]he commonality requirement does not require that each class member have identical claims as long as at least one common question of fact or law is evident."); *see also Smith v. Family Video Movie Club, Inc.*, 2013 WL 1628176, at *11 (N.D. Ill. Apr. 15, 2013) ("Plaintiffs have failed to demonstrate that their individual claims, other than their claim regarding the calculation of overtime pay, are common to the class and capable of classwide resolution.  Consequently, even though they have identified one claim that satisfies Rule 23(a)(2)'s commonality requirement, this issue in and of itself does not *predominate* the otherwise individual claims . . . .  In fact, the location and manager-dependent nature of the remainder of Plaintiffs' claims destroys Rule 23(b)(3) predominance.").

*Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993); *Jenkins*, 782 F.2d at 472))).   The class representative's claims must "have the same essential characteristics of those of the putative class." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001), *abrogated on other grounds by M.D. ex rel. Stukenberg*, 675 F.3d at 839–41.

The named plaintiffs assert that they meet the typicality requirement because all class members' claims "stem from Defendants' failure to provide COBRA coverage and satisfy the COBRA notice requirements."   (Docket Entry No. 55, at 13).   But many of the putative class members did not experience a qualifying event and do not have a claim based on the lack of COBRA notification or benefits triggered by such an event.   Other factors also distinguish some of the named plaintiffs' claims.   For example, Boswell received medical coverage under the BUPA Gold healthcare plan; other potential class members were covered under the BUPA International healthcare plan.   (Docket Entry No. 60, at 9).   Both Boswell and Barton had their employment terminated after May 31, 2010, which disqualifies them for premium reduction under the ARRA. Finally, Brunel contends that because it terminated Slipchenko's employment for cause, her claims are not typical of the putative class members.

Because Boswell was covered under BUPA Gold, issues affecting his COBRA rights may differ from those affecting the rest of the putative class.   It also appears that neither Boswell nor Barton can assert viable ARRA claims because their employment was terminated after that statute's applicable dates.[7]   The circumstances of Slipchenko's termination also raise issues about whether

--------------------------------------------------------------

[7] It is unclear whether second amended complaint purports to assert such claims for Boswell and Barton.   The factual allegations section states that neither Barton or Boswell received required notices concerning the ARRA.  (Docket Entry No. 83, ¶¶ 4–5).  The second amended complaint lists causes of action for failure to provide ARRA notices and benefits for eligible employees, but does not address whether Boswell or Barton would have been eligible employees or entitled to notice of ARRA rights based on the dates of their employment and termination.  (*See id.*, ¶¶ 59–64).

her claim is typical.  The parties dispute whether she suffered a qualifying event.  But each of these three individuals has claims arising from the initial-notice violation of ERISA § 606(a)(4), 29 U.S.C. § 1166(a)(4) that are typical of the class.  As to the COBRA rights following a qualifying event, Brunel has not disputed that Barton's termination was a qualifying event or that her claim is typical of the other putative class members who experienced a qualifying event and have COBRA notification and benefits claims.  That is enough for typicality.

### 3.  Adequacy

The plaintiffs must "fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  The record reflects no apparent conflicts or inability or unwillingness of the named plaintiffs to participate.  Brunel argues that some of the named plaintiffs' injuries are different than those of the rest of the putative class and that Slipchenko faces an affirmative defense based on the circumstances of her job termination.  (Docket Entry No. 60, at 11).  These arguments challenge commonality and typicality, not adequacy of representation. (*See id.* at 10–11).  The adequacy requirement is satisfied.

### B.  Rule 23(b)

In addition to satisfying all the Rule 23(a) requirements, a proposed class must satisfy at least one of the Rule 23(b) categories.  The plaintiffs cited each of the three sections of Rule 23(b) in seeking certification.

### 1.  Rule 23(b)(1)

15

Certification under Rule 23(b)(1) does not apply because the record does not show that requiring the plaintiffs to litigate individually would create inconsistent or varying adjudications that would establish incompatible standards of conduct for the defendants.  *See* FED. R. CIV. P. 23(b)(1)(A).  Nor is there a limited fund or other circumstance supporting a finding that individual litigation would impair the ability of nonparties to protect their interests.  *See* FED. R. CIV. P. 23(b)(1)(B).

### 2.    Rule 23(b)(2)

Certification under Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  FED. R. CIV. P. 23(b)(2).  Rule 23(b)(2) applies only when:

> a single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant.  Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

*Wal-Mart*, 131 S. Ct. at 2557. The plaintiffs' second amended complaint includes requests for injunctive and declaratory relief.  The parties dispute whether this relief predominates over the money damages they also seek.

In *Wal-Mart*, the Supreme Court clarified that "the mere 'predominance' of a proper (b)(2) injunctive claim" is insufficient for certification under Rule 23(b)(2).  *Id.* at 2559.  The Court also noted that the "Advisory Committee's statement that Rule 23(b)(2) 'does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages'" does not mean that Rule 23(b)(2) "extend[s] to cases in which the appropriate final relief relates only partially

and nonpredominantly to money damages." *Id.* (emphasis and citations omitted).  And the Court emphasized that "[i]n the context of a class action predominantly for money damages," Rule 23(b)(2) certification is impermissible because the "absence of notice and opt-out violates due process."  *Id.* at 2559 (citing *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 812 (1985)).

The Department of Labor ruling on the inadequacy of Brunel's notice and Brunel's corrective actions appear to have resolved important issues related to the claim for injunctive and declaratory relief.  (Docket Entry No. 60, Ex. 2, June 15, 2012 Letter from Dep't of Labor to Brunel).  It is unclear that class members will benefit more than they already have if the court issues an injunction or a declaratory judgment.  *See, e.g.*, *Casa Orlando Apts., Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 200 n.62 (5th Cir. 2010) ("[C]ertification under rule 23(b)(2) is appropriate only if members of the proposed class would benefit from the injunctive relief they request." (quoting *In re Monumental Life Ins. Co.*, 365 F.3d 408, 416 (5th Cir. 2004))); *see also Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 525 (5th Cir 2007) (affirming the denial of certification when the named plaintiffs would not benefit from injunctive relief); *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299 (5th Cir. 2007) (vacating a Rule 23(b)(2) certification involving ERISA investments because "many potential class members" would not benefit from the requested injunction).  The primary benefit is the penalties and attorneys' fees sought.

Whether the plaintiffs' claim for money damages defeats Rule 23(b)(2) certification turns on whether the statutory penalties are incidental to injunctive or declaratory relief.  "In *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 ([5th Cir.] 1998), the Fifth Circuit held that a (b)(2) class would permit the certification of monetary relief that is 'incidental to requested injunctive relief or declaratory relief,' which it defined as 'damages that flow directly from liability to the class as a

whole on the claims forming the basis of the injunctive or declaratory relief.'"  *Wal-Mart*, 131 S. Ct. at 2560 (emphasis omitted).  "Such 'incidental damage should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new substantial legal or factual issues, nor entail complex individualized determinations.'"  *Id.* (quoting *Allison*, 151 F.3d at 415).  In *Wal-Mart*, the Court held that defendants are entitled to "individualized determinations of each employee's eligibility for backpay," and thus "the necessity of [litigating individuals' claims] will prevent backpay from being 'incidental' to the classwide injunction."[8]  *Id.* at 2560–61; *see also Nationwide Life Ins. Co. v. Haddock*, 460 F. App'x 26, 29 (2d Cir. 2012) (per curiam) ("In the case at bar, if plaintiffs are ultimately successful in establishing Nationwide's liability on the disgorgement issue, the district court would then need to determine the separate monetary recoveries to which individual plaintiffs are entitled from the funds disgorged.  This process would require the type of non-incidental, individualized proceedings for monetary awards that *Wal-Mart* rejected under Rule 23(b)(2)."); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986–87 (9th Cir. 2011) (concluding that the district court erred in certifying a class under Rule 23(b)(2) "by focusing on evidence of Plaintiffs' subjective intent, instead of on whether the monetary relief could be granted absent individualized determinations of each employee's eligibility for monetary damages." (alteration, citation, and internal quotation marks omitted)).

Brunel argues that the statutory penalty damages the plaintiffs seek are not incidental to the

---

[8] The *Wal-Mart* Court also disapproved of a "Trial by Formula" approach that would take a sample set of the class members, as to whom liability for sex discrimination and the backpay owing as a result would be determined in depositions supervised by a master.  The percentage of claims determined to be valid would then be applied to the entire remaining class, and the number of (presumptively) valid claims thus derived would be multiplied by the average backpay award in the sample set to arrive at the entire class recovery. 131 S. Ct. at 2561.  This court need not decide whether such an approach is permissible in this case because the plaintiffs have not proposed a sampling-based method to determine penalties for COBRA violations.

injunctive relief and require individualized inquiry.  Brunel argues that these damages depend on the court's discretion and turn on whether a defendant's conduct shows harmfulness or bad faith and whether each plaintiff seeking penalties has suffered prejudice as a result.  The plaintiffs argue that there is no requirement of prejudice to justify statutory penalties.

The *Ellis v. Costco* case is instructive.  The district court in that case had found before *Wal-Mart* was decided that Rule 23(b)(2) had been satisfied based on the plaintiffs' statements that their predominant goal in the suit was to obtain injunctive relief.  657 F.3d at 978.  The district court rejected Costco's arguments that the plaintiffs' claims for punitive and compensatory damages precluded certification under (b)(2).  *Id.*  After *Wal-Mart*, the Ninth Circuit held that the district court's (b)(2) analysis could not stand.  The *Wal-Mart* Court had rejected the predominance test the district court used.  "Instead of considering the amount of the damages sought or the subjective intent of the class members seeking relief to determine if injunctive relief 'predominates,' the relevant inquiry is what procedural safeguards are required by the Due Process Clause for the type of relief sought."  *Id.* at 986–87 (citing 131 S. Ct. at 2557–58)).

The Ninth Circuit reversed and remanded for the district court to decide whether the proposed class could be certified under Rule 23(b)(2) under *Wal-Mart*.  The Ninth Circuit instructed the district court that if it "determines that a (b)(2) class may be certified consistent with this opinion, it may consider whether Plaintiffs' claim for punitive damages may properly be sought by a (b)(2) class."  *Id.* at 987.  The district court had found that "claims for punitive damages are suitable for certification under 23(b)(2), because such claims focus on the conduct of the defendant and not the individual characteristics of the plaintiffs."  *Id.* (alterations, citation, and internal quotation marks omitted).  "Whether punitive damages are warranted is based on the *employer*'s

state of mind, i.e., if '[t]he employer [acted] with "malice or with reckless indifference to the plaintiff's federally protected rights."'" *Id.* (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999) (quoting 42 U.S.C. § 1981a(b)(1))).   The Ninth Circuit explained that the district court could "consider whether punitive damages are an allowable 'form[ ] of "incidental" monetary relief' consistent with the Court's interpretation of 23(b)(2) because they do not require an individualized determination."   *Id.* (quoting *Wal-Mart*, 131 S. Ct. at 2560).

The Ninth Circuit contrasted the punitive damages claims, which turned on the defendants' conduct and intent toward the class as a whole, with compensatory damages and backpay claims, which required individualized determinations.   *Id.* at 988.   *Wal-Mart* made clear that "'claims for *individualized* relief (like the backpay at issue here) do not satisfy [Rule 23(b)(2)],'" because the "'key to the (b)(2) class is the "indivisible nature of the injunctive or declaratory remedy warranted."'"   *Id.* at 987 (alteration in original) (quoting *Wal-Mart*, 131 S. Ct. at 2557).   Rule 23(b)(2) could not be used to certify a class seeking relief such as compensatory damages or back pay, which do not turn on the defendants' conduct or intent toward the class as a whole but instead depend on and require individualized determinations for each class member.   The Ninth Circuit ordered the district court to "consider whether a class may be certified under (b)(3) to address Plaintiffs' compensatory damages and backpay claims."   *Id.* at 988.

The statutory provision at issue, § 1132(c), leaves the decisions whether to impose a penalty and, if so, how much, to the court's discretion.   The statute allows the court to impose a penalty and sets a cap.   The court must consider different factors in making the decision.   Some factors turn on the defendant's conduct affecting all employees.   Others, such as prejudice to plaintiffs, are individualized inquiries.   Whether to award statutory penalties for the notice violations at issue

20

depends heavily on the nature and culpability of the defendant's conduct toward the class as a whole. A primary factor for statutory penalties is whether the employer acted in bad faith. *See Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739, 743 (7th Cir. 1991); *Moothart v. Bell*, 21 F.3d 1499, 1506 (10th Cir. 1994); *Agosto v. Academia Sagrado Corazon*, 739 F. Supp. 2d 90, 99 (D.P.R. 2010) (citing *Kerkhof v. MCI WorldCom, Inc.*, 282 F.3d 44, 56 (1st Cir. 2002)); *Berrios–Cintron v. Capitol Food, Inc.*, 497 F. Supp. 2d 266, 271 (D.P.R. 2007).  But the bad-faith showing may also turn on Brunel's conduct toward individual class members, which weighs against finding that the damages are incidental to injunctive relief.

The penalty inquiry also turns in part on whether individual class members were prejudiced. Although each plaintiff's prejudice "is not a prerequisite to an award of civil penalties," it is "one factor, albeit a significant one, out of the factors which district courts may consider in exercising their discretion whether to award penalties."  *Kascewicz v. Citibank, N.A.*, 837 F. Supp. 1312, 1322 (S.D.N.Y. 1993); *see also Rodriguez v. Int'l Coll. of Bus.*, 364 F. Supp. 2d 40, 49 (D.P.R. 2005) ("A showing of prejudice or bad faith is not a prerequisite to the imposition of statutory penalties for failing to inform an employee of the right to continued coverage, but in the court's discretion, these factors may be given dispositive weight."); *Kelly v. Chase Manhattan Bank*, 717 F. Supp. 227, 233 (S.D.N.Y.1989) ("[P]enalties will not be imposed on a plan administrator absent a showing by the plaintiff that he has suffered some degree of harm . . . .").  Some courts have framed the inquiry around whether the employer can avoid or mitigate penalties by showing an absence of prejudice to the plaintiff.[9]  Other courts find that the individual plaintiff's ability to show prejudice is

---

[9] *See, e.g.*, *Chestnut v. Montgomery*, 307 F.3d 698, 704 (8th Cir. 2002) ("The employer's good faith and the absence of harm are relevant in deciding whether to award a statutory penalty.").

important to deciding statutory penalties.[10]  Under either formulation, courts consider prejudice to the individual employee.  That weighs in favor of rejecting certification under Rule 23(b)(2).

Brunel's purported reason for failing to provide the required notices was a uniform belief that BUPA-covered employees were not entitled to COBRA benefits.  This reason for Brunel's conduct applies to the class as a whole.  But in addition to considering Brunel's conduct and intent, this court may also consider prejudice to the individual plaintiffs.  As a result, only part of the decision whether to impose a penalty is incidental to injunctive relief and susceptible of class wide proof and resolution.  The award and amount of any such penalty must also account for bad faith toward, and prejudice suffered by, the individual class members, which is neither incidental nor classwide.[11]

Brunel argues that its failure to comply with COBRA notice requirements does not warrant imposing any penalty and that the lack of harm to individual class members would eliminate or at least reduce the amount of any damages award.  Because the statutory penalty provision makes an award a discretionary decision turning in part on individual prejudice to the employee, both Brunel

---

[10] *See, e.g.*, *Sonnichsen v. Aries Marine Corp.*, 673 F. Supp. 2d 466, 473 (W.D. La. 2009) (declining to award a penalty because "on the basis of the entire record presented . . . plaintiff has not shown entitlement to a penalty. . . . [T]he Court finds plaintiff's allegations of prejudice unconvincing.  Nowhere does plaintiff contend that he would have purchased coverage had he been properly notified under COBRA"); *Miles-Hickman v. David Powers Homes, Inc.*, 589 F. Supp. 2d 849, 880 (S.D. Tex. 2008) (denying penalties because "[a]s to prejudice" the plaintiff "fail[ed] to meet her burden" to show that the defendant's violation caused "a level of prejudice sufficient to warrant imposition of a penalty"); *see also Ferguson v. Vice-President of Human Res.*, 2001 WL 34070237, at *5 (S.D. Tex. Aug. 13, 2001) ("The court concludes that th[e] statutory penalty should be $100.00 per day or $9,200.00.  Ferguson was prejudiced by defendants' conduct because she went without health insurance from September 17, 1999, through December 1, 1999, a time when she was pregnant and incurring medical expenses.  During this time Ferguson did everything reasonably possible to obtain information about her rights under COBRA.").

[11] The statutory language confirms the individualized aspect of the penalty decisions.  "Although the notice requirement imposes on the plan administration the obligation to give notice to a spouse or beneficiary under the employee's plan, a district court may assess a penalty separately only as to a single participant not as to all beneficiaries under the participants' plan."  *Curbelo-Rosario v. Instituto de Banca y Comercio, Inc.*, 248 F. Supp. 2d 26, 31 (D.P.R. 2003) (citing 29 U.S.C. § 1132(c)(1); *Wright v. Hanna Steel Corp.*, 270 F.3d 1336 (11th Cir. 2001)).

and the individual class members must be given a chance to show the presence or absence of prejudice.  *See Wal-Mart*, 131 S. Ct. at 2559; *see also Ellis*, 657 F.3d at 986–87 ("Instead of considering the amount of the damages sought or the subjective intent of the class members seeking relief to determine if injunctive relief 'predominates,' the relevant inquiry is what procedural safeguards are required by the Due Process Clause for the type of relief sought." (citing *Wal-Mart*, 131 S. Ct. at 2557–58)).  Deciding whether to award penalties, and if so, how much, are the type of individualized choices that the *Wal-Mart* Court held could not be made under Rule 23(b)(2).

In sum, it is unlikely that certification under Rule 23(b)(2) is proper.  Class members will benefit from injunctive relief ordered by this court only slightly, and the penalties sought are not incidental to injunctive relief.  Certification must satisfy Rule 23(b)(3).

### 3. Rule 23(b)(3)

Under Rule 23(b)(3), class certification is appropriate when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).  "The predominance inquiry is 'more demanding than the commonality requirement of Rule 23(a)' and requires courts 'to consider how a trial on the merits would be conducted if a class were certified.'"  *Maldonado*, 493 F.3d at 525 (quoting *Bell Atl. Corp v. AT&T Corp.*, 339 F.3d 294, 301–02 (5th Cir. 2003)).  "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, — U.S. —, 133 S. Ct. 1184, 1191 (2013).  "The superiority requirement is simply that 'class action is superior to other available methods for the fair and efficient adjudication of the controversy.'"

23

*Doiron v. Conseco Health Ins. Co.*, 279 F. App'x 313, 317 (5th Cir. 2008) (per curiam) (quoting FED. R. CIV. P. 23(b)(3)). "Determining whether the superiority requirement is met requires a fact-specific analysis and will vary depending on the circumstances of any given case." *Madison v. Chalmette Ref'g, L.L.C.*, 637 F.3d 551, 555 (5th Cir. 2011).

The issues common to all putative class members are Brunel's liability for failing to provide initial notification of COBRA rights and whether statutory penalties are appropriate for this failure based on Brunel's conduct toward all class members. Approximately 20 to 30 putative class members also share common issues arising from Brunel's failure to give COBRA notice and benefits following a qualifying event.[12] This lawsuit follows the Department of Labor action. Based on Brunel's own acknowledgment that COBRA applied to the BUPA members, there is little work needed in this litigation to resolve Brunel's liability for failing to provide initial notice or the notice and benefits following a qualifying event. And, as explained below, plaintiffs Slipchenko and Barton are entitled to summary judgment on Brunel's liability for failure to provide the initial COBRA notices.

---

[12]  This issue may require individualized determination to the extent Brunel asserts an affirmative defense that an individual did not suffer a qualifying event due to termination for "gross misconduct," which the COBRA statute specifically exempts from the definition of qualifying event and for which a former employee is not entitled to COBRA rights. Brunel has asserted such an affirmative defense to Slipchenko's claim. Brunel has reserved the right to assert such an affirmative defense against other former employees in the event this court grants class certification. (Docket Entry No. 78, at 2). The "predominance of individual issues necessary to decide an affirmative defense may preclude class certification." *In re Monumental Life*, 365 F.3d at 420. "[W]hile it is well established that the existence of a defense potentially implicating different class members differently does not *necessarily* defeat class certification, it is equally well established that courts must consider potential defenses in assessing the predominance requirement." *Myers v. Hertz Corp.*, 624 F.3d 537, 551 (2d Cir. 2010) (citing *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010)). Although Brunel argues that Slipchenko was guilty of gross misconduct, and that her claims are not typical of other putative class plaintiffs, Brunel has not argued or presented allegations or evidence that the gross-misconduct exception would apply to other putative class members. Thus, even to the extent they turn on individualized determinations, the potential and unidentified affirmative defenses raised by Brunel do not indicate that individualized determinations would predominate. Brunel's affirmative defenses do not preclude class certification under Rule 23(b)(3).

The disputed issues are affirmative defenses as to some plaintiffs and statutory penalties. Although statutory penalties are in part an individual as opposed to a class issue, *see, e.g.*, *Sonnichsen*, 673 F. Supp. 2d at 473; *Miles-Hickman*, 589 F. Supp. 2d at 880; *Ferguson*, 2001 WL 34070237, at *5, this does not defeat (b)(3) certification.   While prejudice is an individualized inquiry, Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof."  *Amgen*, 133 S. Ct. at 1196 (alterations, emphasis, citations, and internal quotation marks omitted).  "It would drive a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require that every member of the class have identical damages."  *Butler v. Sears, Roebuck & Co.*, — F.3d —, 2013 WL 4478200, at *5 (7th Cir. Aug. 22, 2013).  "If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification."  *Id.*  The individualized issues that arise in determining prejudice do not outweigh the common issues surrounding Brunel's conduct and intent toward the class as a whole.  To the extent there are individualized statutory-penalty considerations, they do not predominate over class issues.

Brunel argues that no plaintiff will be able to show prejudice.  The basis for this assertion as an obstacle to Rule 23(b)(3) certification is unclear.  *See Amgen*, 133 S. Ct. at 1196 ("'[I]ndividualized questions of reliance' that hypothetically might arise when a failure of proof on the issue of materiality dooms [a] fraud-on-the-market class . . . . do not undermine class cohesion and thus cannot be said to 'predominate' for purposes of Rule 23(b)(3)." (citation omitted)).  To the extent Brunel argues that a potential failure of proof on prejudice precludes (b)(3) certification, the

25

argument is unpersuasive.

The proposed class is appropriate for certification under Rule 23(b)(3) in part. The initial-notice ERISA claims are appropriate for class treatment. The individuals who share the initial-notice ERISA claims cannot practicably be joined because of their geographic and global dispersion, making class treatment superior to other dispute-resolution methods. The plaintiffs have shown that litigating on a classwide basis is superior to litigating individual suits asserting initial notice claims. The ERISA claims based on rights following a qualifying event are also appropriate for class treatment, although a smaller subset of individuals have such claims. Damages issues are also certifiable to the extent they turn on Brunel's conduct and intent toward the entire class. To the extent that bad faith or prejudice to individual plaintiffs affects whether or how much statutory penalty should be imposed, these individualized considerations do not predominate over the class issues or preclude a finding of superiority. Finally, the very small subset of the individuals who are also entitled to ARRA rights can litigate those claims in the same suit, but class certification is not necessary or appropriate for these claims.

The plaintiffs' motion for class certification is granted in part and denied in part. It is granted as to the class of approximately 67 individuals with BUPA coverage to resolve Brunel's liability for failure to provide COBRA initial notice and notice and benefits following a qualifying event, and to resolve issues of Brunel's conduct in committing the alleged violations that apply in assessing penalties.

### C.    Appointing Class Counsel

Before appointing class counsel, the court "must consider":

(I)    the work counsel has done in identifying or investigating potential claims in the action;

(ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)    counsel's knowledge of the applicable law; and

(iv)    the resources that counsel will commit to representing the class[.]

FED. R. CIV. P. 23(g)(1)(A).  In addition, the court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  FED. R. CIV. P. 23(g)(1)(B).  Although Brunel does not challenge the experience or qualifications of counsel, the court must satisfy itself that the appointment of plaintiffs' counsel as class counsel would be in the best interests of the class.  *See* FED. R. CIV. P. 23(g)(2).

The plaintiffs have retained two law firms, Cohen Milstein Sellers & Toll, PLLC and Campbell Harrison & Dagley, LLP.  The plaintiffs seek appointment of Cohen Milstein as lead counsel and Campbell Harrison as liaison counsel.  Both firms have extensive experience litigating complex cases, and the court is fully satisfied that the firms meet the criteria set out in Rule 23(g)(1)(A).  Although the plaintiffs do not detail their attorneys' efforts in identifying or investigating potential claims, "it is clear from [the] plaintiffs' filings that they have expended more than a minimal amount of time and resources researching their client[s'] allegations."  *Gross v. United States*, 106 Fed. Cl. 369, 383 (2012) (applying a rule analogous to 23(g)(1)(A)).  That the firms are plaintiffs' choice of counsel and that Brunel has asserted no opposition to the appointment of these firms also weighs in favor of appointment.  *See, e.g.*, *Barrie v. Intervoice-Brite, Inc.*, 2006 WL 2792199, at *13 (N.D. Tex. Sept. 26, 2006), *vacated on other grounds by Luskin v. Intervoice-Brite Inc.*, 261 F. App'x 697 (2008) (per curiam).

The court is satisfied that both firms could fairly and adequately represent the class.  But the plaintiffs have not explained why appointing both lead and liaison counsel is necessary or appropriate in this relatively small case involving a relatively small number of potential class

members.  Appointment of liaison counsel may be appropriate in complicated class actions, such as when a putative class has possibly diverging interests or dissimilar claims.  *See, e.g.*, *Michelle v. Arctic Zero, Inc.*, 2013 WL 791145, at *4 (S.D. Cal. Mar. 1, 2013) (denying a motion to appoint liaison counsel because the plaintiffs did not "address whether the interests of the class diverge or are dissimilar"); *Medlock v. Taco Bell Corp.*, 2009 WL 1444343, at *7 (E.D. Cal. May 19, 2009) (appointing liaison counsel, in addition to interim lead counsel, to represent the possibly diverging interests of a putative class which had brought some separate, "non-overlapping" claims).  The motion to appoint both lead and liaison counsel is denied at this time, without prejudice to reassertion pending a more complete showing of the need for both and discussion of alternative arrangements that might be better suited for the circumstances of this case.

## IV.    The Motion for Summary Judgment

### A.    The Legal Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by  "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402

F.3d 536, 540 (5th Cir. 2005).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star State of Tex.,* 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response."  *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (en banc)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### B.    Analysis

The plaintiffs argue that they are entitled to judgment as a matter of law on all claims, including those based on Brunel's failures to provide initial notice of COBRA rights and notice of COBRA and ARRA rights to employees who had a qualifying event, and those claims based on Brunel's failure to provide substantive COBRA or ARRA benefits to those employees who had qualifying events.  The plaintiffs also argue that this court can impose statutory damages for the notice violations as a matter of law based on the present record.  Brunel argues that summary judgment is not proper because its affirmative defense against Slipchenko — that her employment

was terminated because of her gross misconduct — turns on disputed factual issues.  (Docket Entry No. 72).  Brunel argues that the affirmative defense as to Boswell precludes summary judgment because there is a fact dispute about whether he was entitled to COBRA rights under the BUPA Gold Plan, which was for non-U.S. employees.  Brunel also argues that fact disputes preclude deciding penalties or damages on summary judgment.  (Docket Entry No. 78).

The plaintiffs argue in response that the present record eliminates fact disputes as to their entitlement to penalties and damages.  They also argue that Brunel's affirmative defenses fail as a matter of law; that the record eliminates fact disputes about their entitlement to penalties and damages; and that, in any event, Brunel's failure to provide initial notice or notice or benefits for those under covered BUPA plans who suffered qualifying events is undisputed.  (Docket Entry No. 72, 80).

Summary judgment is inappropriate as to Boswell.  The parties agree that Boswell was covered by a different plan — the BUPA Gold Plan — than the other plaintiffs.  The significance of this fact is unclear.  Brunel argues that this plan, for non-U.S. employees, did not entitle Boswell to the rights of other BUPA plan members.  (Docket Entry No. 78, at 7 n.7).  The plaintiffs argue that this fact is immaterial because Boswell was employed in the U.S. and was entitled to the same rights as the rest of the plaintiffs.  (Docket Entry No. 72, at 22).  The court cannot conclude based on the present record whether and to what extent this fact affects the outcome, or whether and to what extent Boswell worked for U.S. versus non-U.S. entities during that period and whether that affects the outcome.  (*See, e.g.*, Docket Entry No. 78, at 7 n.7 ("Boswell was apparently placed on BUPA Gold because he was supposed to be working in Qatar through Brunel International's Qatar office.  Instead, he worked overseas through the U.S. office.")).  The plaintiffs' motion for summary

judgment is denied at this time as to Boswell.

The remaining plaintiffs are entitled to partial summary judgment on the initial notice claims. Brunel does not dispute that it failed to provide initial notice. It disputes only whether statutory penalties should be imposed and, if so, in what amount. The penalties sought are not mandatory. A court may award a statutory penalty of up to $110 per day against an employer who fails to provide adequate COBRA notice. 29 U.S.C. § 1132(c)(1). In awarding penalties under § 1132(c), district courts in the Fifth Circuit look at the presence or absence of good faith on the part of the employer and the presence or absence of prejudice to the plaintiff. *See Sonnichsen*, 673 F. Supp. 2d at 473. The primary factor is whether the employer acted in bad faith. While prejudice to the plaintiff is not required to award statutory penalties, it is a significant factor. If the defendant acted in bad faith, a showing that a plaintiff was harmed by not receiving notice may justify a stiffer penalty than the conduct alone warranted. But the defendant might show that despite some evidence of bad faith, the absence of harm to the plaintiffs should reduce the penalty. At bottom, the penalty is discretionary and fact-specific.

The record shows that Brunel is liable as a matter of law for violating the initial notice requirement. But the present record is insufficient to decide whether statutory penalties are appropriate or in what amount. The disputes about Brunel's corrective actions, Brunel's compliance with the Department of Labor's instructions, the presence or degree of Brunel's bad faith, and the presence or extent of prejudice to the plaintiffs preclude summary judgment on the penalty awards sought. Summary judgment is granted to the extent that Brunel is liable for violating the initial notice requirement. It is denied as to the amount of statutory penalties, if any.

For the claims based on qualifying events, summary judgment is denied as to Slipchenko.

31

Fact disputes about whether Brunel terminated her employment for gross misconduct preclude summary judgment.  An employee terminated for gross misconduct is not entitled to COBRA notice or benefits.  *See* 29 U.S.C. § 1163(2).  "There are no regulations in effect that define 'gross misconduct' for purposes of COBRA, nor is gross misconduct defined in the COBRA statute itself or the employer's health care plan at issue." *Boudreaux v. Rice Palace, Inc.*, 491 F. Supp. 2d 625, 633 (W.D. La. 2007).  "Gross misconduct may be intentional, wanton, willful, deliberate, reckless or in deliberate indifference to an employer's interest.  It is misconduct beyond mere minor breaches of employee standards, but conduct that would be considered gross in nature." *Collins v. Aggreko, Inc.*, 884 F. Supp. 450, 454 (D. Utah 1995); *see also Paris v. F. Korbel & Bros., Inc.*, 751 F. Supp. 834, 838 (N.D. Cal. 1990) (defining gross misconduct as "conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such a degree or recurrence as to manifest equal culpability, wrongful intent, or evil design, or to show an intentional and substantial disregard of the employer's interests or the employee[']s duties and obligations to his employer.").  If Brunel terminated Slipchenko's employment for gross misconduct, Brunel would not have been required to provide notice or benefits under COBRA (or the ARRA) because such a termination would not have been a qualifying event.

Brunel argues that Slipchenko's conduct leading up to her job termination amounts to  gross misconduct.  (Docket Entry No. 78, at 12–16).  Slipchenko argues that this is a *post hoc* rationalization, emphasizing that the documents relating to her job termination do not refer to "gross misconduct" and that the Department of Labor eventually found that her termination was a

32

qualifying event.  (Docket Entry No. 80, at 9–10).  But Slipchenko does not appear to dispute that she was fired shortly after the employer she was placed with discovered that she was receiving two reimbursements for her housing costs, one from Brunel and one from the employer.  Slipchenko does not appear to dispute her failure to disclose the alleged double payment or to return the excess amount when it was discovered.  Based on these facts, and given the lack of clear statutory or caselaw guidance on the meaning of "gross misconduct," summary judgment is improper.  Fact disputes remain as to whether Slipchenko's employment termination was a qualifying event.  The motion for summary judgment is denied as to her COBRA and ARRA notice and benefits claims.

Barton, on the other hand, appears entitled to summary judgment on her COBRA qualifying event claims.[13]  Brunel does not dispute that Barton's employment termination was a qualifying event. (Docket Entry No. 72, at 8).  Brunel was required to provide Barton notice and coverage but failed to do so.  Summary judgment is not appropriate, however, as to Barton's claims for damages or penalties for the failure to provide notice or coverage.  It is unclear from the present record whether and to what extent the failure to provide notice of or access to continuation of coverage harmed Barton.  She has not identified evidence showing that she sought insurance after her Brunel employment ended.  (Docket Entry No. 78, at 23–24).  She does not argue that she purchased more expensive insurance on the private market.  Unlike Slipchenko, she does not allege that she sought medical treatment when she was eligible for coverage continuation, or that her medical expenses were higher because she was uninsured.[14]  Based on Barton's allegations and evidence, there are

---

[13] Barton is not covered by the ARRA because the date Brunel terminated her employment was after the dates covered by that statute.

[14] *Cf. O'Shea v. Childtime Childcare, Inc.*, 2002 WL 31738936, at *7 (N.D.N.Y. Dec. 2, 2002) ("During this time period [between jobs but while eligible for COBRA benefits and continuation of coverage], O'Shea was diagnosed with and treated three times for a gastrointestinal disorder for which she was without

factual issues about the extent to which she was prejudiced by the failure to provide notice of her COBRA continuation rights.  The motion for summary judgment is granted as to liability for COBRA notice and benefits violations, but is denied as to damages or penalties.[15]

In sum, the plaintiffs' motion for summary judgment is:

• denied as to Boswell;

• granted for the remaining plaintiffs as to Brunel's liability for failing to provide initial notice;

• granted for Barton as to Brunel's liability for failing to provide notice and benefits after a qualifying event; and

• denied in all other respects

## V.    Conclusion

The plaintiffs' motion for class certification is granted in part and denied in part.  This court orders that this case may proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  The named plaintiffs are appointed as class representatives.  The following class is certified: All employees of Brunel who elected coverage provided by British United Provident Association Limited ("BUPA"), together with their spouses and other covered dependents who were participants or beneficiaries in the Brunel Group Health Plan at any time from April 15, 2009 until

---

insurance coverage.  Thus, O'Shea was prejudiced by defendants' failure to provide the required notice." (citation omitted)); *Holford v. Exhibit Design Consultants*, 218 F. Supp. 2d 901, 909 (W.D. Mich. 2002) (describing "foregone health care treatments" as prejudice to the employee who did not receive the required COBRA notice).

[15]  This ruling is subject to Brunel's reservation that it may "assert affirmative defenses against [Barton's] claims" if this court allows her to join this suit.  (Docket Entry No. 78, at 2).  This court has allowed Barton to join this suit, but Brunel has not supplemented its pleadings or summary judgment response to raise affirmative defenses against Barton.  Moreover, Brunel's response challenges summary judgment on the grounds that fact disputes preclude ruling as a matter of law as to penalties and/or damages, not liability

the present.  The following issues are certified for class treatment:

- Brunel's liability for failure to provide COBRA initial notice;

- Brunel's liability for failure to provide notice and benefits following a qualifying event; and

- Brunel's conduct and intent toward the class as a whole in committing the alleged statutory violations.

The motion for summary judgment is granted in part and denied in part.  A status conference is set for **September 16, 2013,** at 10:00 a.m. in Courtroom 11-B.

SIGNED on August 30, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge