**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TAMARA SLIPCHENKO, DAVID | § | |
| "COWBOY" BOSWELL, and VALORIE | § | |
| BARTON, on behalf of all other persons, | § | |
| similarly situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-1465 |
| | § | |
| BRUNEL ENERGY, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

The plaintiffs, Tamara Slipchenko, David R. Boswell, and Valorie Barton,[1] worked for

Brunel Energy, Inc., a Houston-based subsidiary of Brunel International N.V. (together, "Brunel").

The plaintiffs sued Brunel on behalf of themselves and similarly situated present and former

employees, alleging that it failed to provide required notices of their right to continued health care

coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") and to

premium reduction under the American Recovery and Reinvestment Act of 2009 ("ARRA").  After

fact discovery, the court granted the plaintiffs' motion to certify the class under Federal Rule of Civil

Procedure 23, granted the plaintiffs' motion for partial summary judgment as to Brunel's liability

on various claims, and denied the plaintiffs' motion for summary judgment as to damages and

---

[1] The plaintiffs' initial complaint, (Docket Entry No. 1), named Tamara Slipchenko as the representative plaintiff.  The plaintiffs later filed an amended complaint, (Docket Entry No. 36), adding David R. Boswell as a representative plaintiff.  The plaintiffs filed a motion for leave to amend to add Valorie Barton as a named plaintiff, (Docket Entries No. 50, 51).  This court granted the plaintiffs' motion to amend, (Docket Entry No. 82).  A second amended complaint names the three plaintiffs as class representatives, (Docket Entry No. 83).

statutory penalties.  *See Slipchenko v. Brunel Energy, Inc.*, No. H-11-1465, 2013 WL 4677918 (S.D. Tex. Aug. 30, 2013).

Over the next year, class counsel sent notices to the class members and the parties engaged in further discovery.  In August 2014, the parties reached a settlement.  Brunel agreed to pay $375,000 to settle the COBRA and ARRA claims and $624,999 in attorney's fees and costs.  On September 30, 2014, this court preliminarily approved the proposed settlement, form and method of notifying class members, and plan of allocation.  (Docket Entry No. 163).  No class members filed objections during the 60-day notice period.  Class counsel have moved for final approval of the settlement, plan of allocation, and division of fees; for service awards for the named plaintiffs, and for an award of attorneys' fees. (Docket Entry Nos.  166; 171; 176).  On January 20, 2015, the court held a final fairness hearing.

Based on the memoranda in support of the proposed settlement, the parties' arguments at the preliminary and final fairness hearings, the remainder of the record, and the relevant law, this court: (1) approves the proposed settlement, plan of allocation, and division of fees; (2) approves the proposed service awards totaling $12,000; and (3) approves attorneys' fees and costs in the amount of  $624,999.  (Docket Entry Nos.  166; 171; 176).  The reasons are explained in detail below.

I.      **The Litigation and the Proposed Settlement Agreement**

A.      **The Plaintiffs' Claims**

Brunel is in the energy business.  Its clients are companies with projects requiring individuals with specialized knowledge for relatively short periods.  Brunel places individuals with the necessary knowledge in temporary positions at its client companies to work on specific projects. Brunel enters into short-term employment contracts with the individuals it hires for its clients'

projects, but the employees work directly with the clients.  When the project is finished, the individual's employment with Brunel is usually terminated.  If the same individual is hired to work on another client project, Brunel and the individual enter into a new employment contract.  (Docket Entry No. 83, at 9–10).  During their employment with Brunel, the named plaintiffs were insured under the Brunel Group Health Plan (the "Plan") and elected coverage under BUPA.  (*Id.* at 5).  They sued in 2011, alleging that Brunel failed to provide them and other similarly situated employees with notice of their right to elect COBRA coverage when they first began participating in the Plan; failed to provide notice of their right to continue coverage when their employment was terminated, which the plaintiffs argue was an event qualifying them for continued COBRA coverage; failed to offer a premium reduction to eligible individuals; and failed to notify employees of their eligibility for premium reduction.  (*Id.* at 15–19).

COBRA gives workers who lose health coverage due to a qualifying event the opportunity to elect continued coverage from their group health plan for a limited time.  *See* 29 U.S.C. §§ 1161, 1166.  COBRA requires an employer to notify an eligible employee twice: first, when the employee begins participating in a group health plan; and second, when the employee notifies the employer that a qualifying event has occurred.  *Id.*  The ARRA provides eligible individuals with a right to reduced premium payments for healthcare coverage they receive through COBRA.  *See* Pub. L. No. 111-5, § 3001(a)(1)(A), 123 Stat. 115, 455 (codified as amended at 26 U.S.C. § 6432).[2]  The ARRA also requires an employer to notify an eligible employee of this right when he or she is notified of

---

[2]   Section 3001(a) of the ARRA was amended by § 1010 of the Department of Defense Appropriations Act, Pub. L. No 111-118, § 1010, 123 Stat. 3409, 3472–73 (2009); § 3 of the Temporary Extension Act of 2010, Pub. L. No. 111-144, § 3, 124 Stat. 42, 43–45  (2010); and § 3 of the Continuing Extension Act of 2010, Pub. L. No. 111-157, § 3, 124 Stat. 1116, 1117 (2010), to extend eligibility for the premium reduction program to involuntary terminations that occurred before May 31, 2010.

the right to elect continued coverage under COBRA after a qualifying event. *See* Pub. L. No. 111-5, § 3001(a)(7)(A)(I), 123 Stat. 115, 458–59 (codified as amended at 26 U.S.C. § 6432).

### B.   The Named Plaintiffs

#### 1.   Tamara Slipchenko

Brunel employed Tamara Slipchenko from August 2008 until March 2010.  She worked as an Environmental and Regulatory Advisor at Exxon/Mobil Development Company.  During her Brunel employment, she received health coverage under the Plan.  (Docket Entry No. 83 at 10).  When Slipchenko's employment was terminated, she asked Brunel for information about COBRA.  In response, Brunel told her that employees who elected coverage under BUPA were not eligible for COBRA coverage.  (*Id*. at 11–12).

In December 2010, Slipchenko was diagnosed with Hodgkin's lymphoma and needed treatment.  (*Id*. at 12).  At some point after her Brunel employment ended, Slipchenko was able to get health coverage from another insurance company, Health Net.  (*Id*.).  In February 2011, Slipchenko contacted the Department of Labor about her COBRA eligibility and was told that because Brunel had terminated her employment, she was eligible for both continued coverage and for premium reduction under the ARRA.  (*Id.* at 12–13).  The Department of Labor sent Brunel a letter dated March 3, 2011, directing it to provide Slipchenko with a COBRA package within 10 days.  (*Id*. at 13).  Brunel initially failed to comply.  Approximately three months later, with one month of eligibility left, Brunel offered Slipchenko COBRA coverage.  (*Id*. at 14).

In this lawsuit, Slipchenko alleged that Brunel failed to provide her initial notice of her COBRA rights when she began participating in the Plan in August 2008 and failed to give her notice of her COBRA and ARRA rights when her employment ended in March 2010.  (*Id*. at 10–11).

4

During the course of this litigation, she has frequently communicated with class counsel, responded to requests for production and interrogatories, given a deposition, and participated in mediation and settlement negotiations.

### 2.    David R. Boswell

Brunel employed David R. Boswell from March 2007 to July 2010 as an Offshore Installation Technical Foreman.  He received health coverage under BUPA.  (*Id*. at 14).  Boswell was apparently insured under a different plan than the other class members.  He was covered by the BUPA Gold Plan, and was the only Brunel-employed American citizen covered by that plan. (Docket Entry No. 60, at 7 (citing Ex. 1, Decl. of Bob Glover, Gen. Mgr. – Am., Brunel Energy, Inc.)).  Boswell alleged that Brunel failed to provide him with an initial notice of his COBRA rights and with a notice of his right to continued coverage under COBRA once his employment was terminated.  (Docket Entry No. 83, at 14).  Boswell's employment was terminated after the May 31, 2010 deadline for ARRA coverage.[3]  During this litigation, Boswell has communicated with class counsel, responded to requests for production and interrogatories, given a deposition, and participated in mediation and settlement negotiations.

### 3.    Valorie Barton

Brunel employed Valorie Barton from November 2009 to November 2010 as a Contract Administrator at Exxon/Mobil Global Services Company.  She received health coverage under BUPA.  (*Id.*).  Barton alleged that Brunel failed to provide her with an initial notice of her COBRA rights and with notice of her right to continued coverage once her employment was terminated.  (*Id.* at 14–15).  She alleged that Brunel did not offer her a COBRA package until over nine months after

---

[3] *See supra* n.2.

it terminated her employment.  (*Id*. at 15).  Her employment ended after the May 31, 2010 deadline

for ARRA coverage.[4]  Like the other named plaintiffs, she has communicated with class counsel,

responded to production requests and interrogatories, given a deposition, and participated in

settlement negotiations.

### C.    Procedural Background

On August 30, 2014, at the close of fact discovery, the court granted the plaintiffs' motion

for class certification under Federal Rule of Civil Procedure 23.  *See Slipchenko*, 2013 WL 4677918,

at *1-2, *14.  The court certified the COBRA claims but did not certify the ARRA claims because

"it appear[ed] that Slipchenko [was] the only individual among the putative class members with such

claims" and "[t]o the extent there are individuals with additional [ARRA] claims, the number of such

individuals is so small—far fewer than the 20 to 30 individuals who experienced a qualifying event

of any type—that disputed issues about their claims can be resolved on an individual basis."  *Id.* at

n.5.[5]

The court also granted Slipchenko and Barton partial summary judgment as to (1) Brunel's

liability for failing to provide initial notice of their right to continued health care coverage under

COBRA and (2) its liability for failing to provide notice and benefits under COBRA to Barton after

a qualifying event.  *Id.* at *16-17.  The court found that "Brunel is liable as a matter of law for

violating [COBRA's] initial notice requirement," but could not grant summary judgment as to

damages and penalties (or Brunel's liability to Boswell) on the record at the time.  *Id.*  Class counsel

---

[4]  *See supra* n.2.

[5]  The court permitted the members of the class to individually assert ARRA claims as part
of this action.  *See Slipchenko*, 2013 WL 4677918, at *14.  The only person to do so was Tamara
Slipchenko.  (Docket Entry No.  177, at 3).

6

sent notices to the class members, and the parties engaged in further discovery.

### D.    The Proposed Settlement Agreement

On August 25, 2014, the parties reached a settlement for the COBRA class certified by the

court (excluding those who elected to opt out and those who were not identified by the defendants):

> All employees of Brunel who elected coverage provided by British United Provident
> Association Limited ("BUPA"), together with their spouses and other covered
> dependents who were participants or beneficiaries in the Brunel Group Health Plan
> at any time from April 15, 2009 until August 25, 2014.

(Docket Entry No. 157, at 9); *see also Slipchenko*, 2013 WL 4677918, at *1-2.

The parties conducted negotiations in two phases.  First, the parties negotiated the class

award without regard to attorney's fees.  Brunel agreed to pay $375,000 to settle (a) the COBRA

claims and (b) subject to the court's permission for including the ARRA claims on a class-wide basis

for settlement purposes, the ARRA claims.  (Docket Entry No. 157, ¶ XII.1).  Under the proposed

settlement, the guaranteed minimum for each class member is $100 and the average class award is

$5,000.  Class members would not need to make affirmative claims on the fund.  Instead, under the

proposed plan of allocation, they would be issued award checks based on a formula considering the

following factors:

> (1) the number of days that the class member did not receive notice; (2) the number
> of days, if any, that the class member did not have health insurance; (3) whether the
> class member had health issues or medical expenditures during that period (or
> otherwise suffered harm); (4) whether the class member inquired about COBRA
> benefits and/or stated under oath that they would have purchased the COBRA
> coverage; and (5) whether the class member experienced actual harm as a result of
> not being provided with COBRA coverage.

(Docket Entry No. 158, at 2-3); *see also* (Docket Entry No. 172 at 6 n.7); (Docket Entry No. 177,

at 15).  The parties also agreed that the named plaintiffs would "be entitled to seek a Service Award

to be paid out of the Class Settlement Fund in recognition of their service and/or for reimbursement

of their time and expenses subject to the approval of, and in an amount to be determined by, the Court." (Docket Entry No. 157, ¶ IX.5). Only after agreeing on the class fund did the parties negotiate attorney's fees and costs. Brunel agreed to pay $624,999 in attorney's fees and costs.

On September 30, 2014, the court preliminarily approved the parties' settlement agreement. (Docket Entry No. 163). On October 13, 2014, the plaintiffs moved for approval of both (1) $12,000 in proposed service awards—$6,000 for Slipchenko, $4,000 for Boswell, and $2,000 for Barton—for representing the class and (2) $624,999 in attorney's fees and costs. (Docket Entry No. 167; 171). On January 5, 2015, the plaintiffs moved for final approval of the settlement, plan of allocation, and division of fees. (Docket Entry No. 176). The court held a final fairness hearing on January 20, 2015. The motions are analyzed below, starting with the motion for final approval.

## II.    The Motion for Final Approval of the Proposed Settlement, Plan of Allocation, and Division of Fees

Class counsel seek final approval of the proposed settlement, plan of allocation, and division of fees (subject to this court's approval of their motion for fees, which is discussed below).

Federal Rule of Civil Procedure 23(e) requires court approval of a class settlement and establishes certain procedures:

> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

8

     (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e).  The court addresses each of these five requirements, with the (e)(2) fairness requirement discussed last.

## A.    Notice

"There are no rigid rules to determine whether a settlement notice satisfies constitutional or Rule 23(e) requirements[.]"  *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005).  Instead, "a settlement notice need only satisfy the broad reasonableness standards imposed by due process."  *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) (internal quotation marks omitted). Due process is satisfied if the notice provides class members with the "information reasonably necessary for them to make a decision whether to object to the settlement." *Id.*; *see also Wal–Mart Stores*, 396 F.3d at 114 (explaining that "the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" (internal quotation marks omitted)); Aggregate Litigation § 3.04(a) ("The purpose of a notice of a proposed class settlement is to set forth the major contours of the proposal and to inform class members of their right to attend the fairness hearing and to lodge written objections by a prescribed date should they so desire.").

In moving for preliminary approval of the settlement, class counsel submitted proposed summary and detailed notices.  (Docket Entry No.  158-1).  The court granted its preliminary approval to the form and manner of providing notice proposed by the parties.  (Docket Entry No. 163).  The notice sent to class members (1) informs the class members of the nature of the action and the general terms of the settlement; (2) provides the addresses of the settlement website

established by the settlement administrator and of the firm website of Cohen Milstein Sellers & Toll, PLLC, where class members can readily access information and documents related to the settlement; (3) provides the street address and location of the court, where class members may obtain additional information about the action; and (4) contains the date, time, and place of the fairness hearing where class members can appear and/or object to the settlement. (Docket Entry No. 165-1). Class counsel submitted the affidavit of Lillian Ewing, who works for Gilardi & Co. LLC ("Gilardi"), the Settlement Administrator. (Docket Entry No. 179). Gilardi used the National Change of Address service to obtain the most recent address for each class member based on the list of names provided by defendants. (Docket Entry No. 179, ¶¶ 2-5). Gilardi sent electronic notice to the 28 names on the class list for whom electronic information was provided and mailed notice to the remaining 41 names for whom no email address information was provided by defendants. (*Id.* ¶¶ 3-4). Four notices were returned as undeliverable, but Gilardi successfully located one updated address and resent the notice to that location. (*Id.* ¶ 4). When Gilardi learned that 19 of the social security numbers provided to Gilardi did not match those on file with the government, Gilardi sent W-9 forms to those class members along with a letter requesting that they complete, sign, and return the form to Gilardi to avoid automatic backup withholding on their settlement disbursement. (*Id.* ¶¶ 7-9).

The form and method of providing notice was the "best notice practicable under the circumstances," and provided the class members with a full opportunity to consider the terms of the settlement agreement and to make an informed decision as to whether to participate, opt-out, or object to the settlement. The notice provided satisfied the reasonableness standards imposed by due process and Rule 23. *See In re Heartland*, 851 F. Supp. 2d 1061-62.

### B.   Side Agreements

Rule 23(e) requires "[t]he parties seeking approval [to] file a statement identifying any Agreement made in connection with the proposal." FED. R. CIV. P. 23(e)(3).  This requirement does not concern disclosure of the basic settlement terms; "[i]t aims instead at related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." *Id.* Committee Notes (2003).  "The spirit of [formerly numbered] Rule 23(e)(2) is to compel identification of any agreement or understanding," written or oral, "that might have affected the interests of class members by altering what they may be receiving or foregoing." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.631 (2004) ["MANUAL"].

In addition to agreeing to pay $375,000 into a general settlement fund for the class, Brunel agreed that the named plaintiffs would "be entitled to seek a Service Award to be paid out of the Class Settlement Fund in recognition of their service and/or for reimbursement of their time and expenses subject to the approval of, and in an amount to be determined by, the Court."  (Docket Entry No. 157, ¶ IX.5).  The agreement does not specify an amount, but, as discussed below, the plaintiffs have moved for service awards totaling $12,000—$6,000 to Tamara Slipchenko, $4,000 to David Boswell, and $2,000 to Valerie Barton.  (Docket Entry No. 166).  Brunel also agreed to pay class counsel $624,999 in attorneys' fees and costs. (Docket Entry No. 157, ¶¶ IX.1-4). The parties have stated that they did not discuss the specific amounts of attorneys' fees and costs until after negotiating a settlement for the class.  All the amounts are subject to court review and approval. (Docket Entry No. 159, ¶ 8).

### C.   An Additional Opt-Out Opportunity

A certifying court may refuse to approve a settlement unless it provides an additional opportunity for class members to opt out. *See* FED. R. CIV. P. 23(e)(4); *Tardiff v. Knox Cnty.*, 567 F. Supp. 2d 201, 209 (D. Me. 2008). The 2003 amendments to the Federal Rules explain:

> Rule 23(e)(3) [now (e)(4)] authorizes the court to refuse to approve a settlement unless the settlement affords a new opportunity to elect exclusion in a case that settles after a certification decision if the earlier opportunity to elect exclusion provided with the certification notice has expired by the time of the settlement notice. A decision to remain in the class is likely to be more carefully considered and is better informed when settlement terms are known.

FED. R. CIV. P. 23(e)(4) Committee Notes (2003). Rule 23(e)(4) comes into play when the opt-out opportunity expired before the members received notice of a proposed settlement. It is inapplicable here.

### D.     Objections

Class members must be provided an opportunity to object to the proposed settlement. FED. R. CIV. P. 23(e)(5). The notice sent to the class members informed them of their right to object and outlined the process for doing so. (Docket Entry No. 165-1). To date, no members of the class objected.

### E.     Fair, Reasonable, and Adequate

Finally, "the court may approve [the proposed settlement] only after a hearing and on finding that it is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). This court held a final fairness hearing on January 20, 2015. No members of the class appeared at the hearing to object.

The Fifth Circuit lists six factors that a district court must consider in determining the fairness, reasonableness, and adequacy of a proposed settlement:

> (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs' prevailing on the

merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members.

*All Plaintiffs v. All Defendants*, 645 F.3d 329, 334 (5th Cir. 2011) (quotations omitted). These six factors are known as the "*Reed* factors," after *Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983). *See id.* at 172. "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Wal–Mart Stores*, 396 F.3d at 116 (quoting MANUAL FOR COMPLEX LITIGATION, THIRD § 30.42 (1995)); *accord Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) ( "When considering the *Reed* factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." (internal quotation marks and alteration omitted)). This presumption notwithstanding, the settlement proponents bear the burden of demonstrating the settlement's fairness. *See Katrina Canal Breaches*, 628 F.3d at 196.

"A proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein*, 705 F. Supp. 2d at 649. At the same time, "a proposed settlement in which the class receives an insubstantial payment while the fees requested by counsel are substantial could raise fairness concerns." AGGREGATE LITIGATION § 3.05 cmt. b.

The *Reed* factors are examined below.

### 1.  Evidence of Fraud or Collusion

"The Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Klein*, 705 F.Supp.2d at 651 (quoting *Liger v. New Orleans Hornets NBA Ltd. P'ship*, Civ. A. No. 05–1969, 2009 WL 2856246, at *3 (E.D.La. Aug. 28, 2009)).

13

There has been no suggestion of any fraud or collusion.  Nor does the record support such a finding.  *See DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007) ("[T]here are no allegations or indications of fraud or collusion.").  The parties vigorously and extensively litigated this case for more than three years before settling.  Class counsel have described the arm's-length negotiations that resulted in this settlement. (*See* Docket Entry No. 159, ¶¶ 3, 5, 7).  The negotiations occurred over three months and class counsel rejected several settlement offers before agreeing to the $375,000 settlement agreement. (*Id.* ¶ 5).  Given these representations, the lack of evidence showing any fraud or collusion, and the vigorous litigation of this case before the parties settled, this factor supports a finding that the settlement is fair, reasonable, and adequate.

"It is common practice today for class counsel to negotiate a specific fee award after they have successfully negotiated the class's recovery."  *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 844 (E.D. La. 2007) (citing cases).  Here, as in *Turner*, the parties negotiated and agreed to the proposed settlement before reaching the issue of attorneys' fees.  Their agreement on attorneys' fees is subject to court review and approval. This factor supports approval of the settlement.

### 2.      Complexity, Expense, and Duration of Litigation

"When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened."  *Klein*, 705 F. Supp. 2d at 651 (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)).  Although this court granted partial summary judgment on liability and the trial would focus on the availability of statutory penalties, proving these damages at trial would have been difficult and complex.  The court would have considered a range of evidence, including whether the defendants acted in bad faith and whether the class members suffered any harm or prejudice.  *See Slipchenko*,

14

2013 WL 4677918, at *11-12.  Litigating this case to trial would also be expensive and time consuming, without any guarantee of success because the court retains discretion whether to award statutory penalties.  Without settlement, the parties wold have spent significant time briefing motions in limine, prepping fact witnesses, and preparing for cross-examination.  Although few pretrial obstacles remained, the novel issues involving COBRA class certification, statutory penalties, and individual ARRA claims could well have resulted in an appeal, which "would likely prolong the litigation, and any recovery by class members, for years." *Rodriguez v. West Pub'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *see also Wal–Mart Stores*, 396 F.3d at 118.  Settling now "avoids the risks and burdens of potentially protracted litigation" requiring the plaintiff class to incur further expenses without the guarantee of any recovery.  *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004).  This second factor supports approving the settlement.

### 3.       The Stage of Litigation and the Available Discovery

Under the third *Reed* factor, the key issue is whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Ayers*, 358 F.3d at 369.   "A settlement can be approved under this factor even if the parties have not conducted much formal discovery."  *Klein*, 705 F. Supp. 2d at 653 (citing, for example, *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977)); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (agreeing with district court's conclusion that "formal discovery is not a prerequisite to approving a settlement as reasonable").  The "[s]ufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed."  *San Antonio Hispanic Police Officers' Org., Inc. v.*

*City of San Antonio*, 188 F.R.D. 433, 459 (W.D. Tex.1999).   "The Court should consider all information which has been available to all parties."  *DeHoyos*, 240 F.R.D. at 292.

The parties have litigated this action for more than three years.  During this time, class counsel reviewed numerous documents produced by the defendants, propounded 36 requests for production and 11 interrogatories, 25 requests for admissions, took 6 depositions, and defended depositions noticed by the defendants of the 3 named plaintiffs and 5 absentee class members. (Docket Entry No. 160, ¶ 3).  By the time the parties settled, the plaintiffs had already received class certification and a favorable summary judgment determination on liability.  They even submitted witness and exhibit lists in preparation for trial.  Given the substantial discovery, motion practice, and trial preparation, the parties and the district court possessed ample information with which to evaluate the merits of the competing positions in this case.  The parties have shown that they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses. Class counsel were able to determine the settlement's adequacy in relation to the probability of success on the merits were this litigation to continue.  The court is well aware of the parties' positions in this case, the legal issues, and the risks to the class should litigation continue.  *See Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 344 (N.D. Tex. 2011). This factor favors approval of the proposed settlement.

### 4.    The Probability of Success on the Merits

The probability of success on the merits is the most important *Reed* factor.  *Smith v. Crystian*, 91 Fed.Appx. 952, 954 n. 3 (5th Cir. 2004) (per curiam) (citing *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)); *accord, e.g., Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011).  "In evaluating the likelihood of success, the Court must compare the

terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos*, 240 F.R.D. at 287 (citing *Reed*, 703 F.2d at 172); *see also Poplar Creek*, 636 F.3d at 245 ("The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." (quotations omitted)).  At the same time, a district court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed*, 703 F.2d at 172 (quotations and alterations omitted). This factor favors approval of the settlement when the class's likelihood of success on the merits is questionable. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326–27 (5th Cir. 1981) (affirming district court's finding that this factor favored approving the settlement when the class faced major obstacles in establishing proof of liability and damages).

Despite obtaining partial summary judgment on liability, the plaintiffs faced an uncertain likelihood of obtaining statutory penalties at trial for the defendants' failure to notify class members of their continuing coverage under COBRA.  First, the statutory provision at issue, § 1132(c), leaves the decisions whether to impose a penalty and, if so, how much, to the court's discretion. *See* 29 U.S.C. § 1132(c)(1); *Slipchenko*, 2013 WL 4677918, at *17 ("The penalties sought are *not mandatory*.  A court *may* award a statutory penalty of up to $110 per day against an employer who fails to provide adequate COBRA notice." (emphasis added)).  Thus, although the plaintiffs could have obtained as much as $110 per day for each notice violation, they also could have received nothing.

Second, it is difficult to obtain such penalties under the prevailing legal standard.  Courts consider several factors in making this inquiry, but two important factors are bad faith and prejudice. *See Slipchenko*, 2013 WL 4677918, at *17 ("In awarding penalties under § 1132(c), district courts

in the Fifth Circuit look at the presence or absence of good faith on the part of the employer and the presence or absence of prejudice to the plaintiff."); *see also Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739, 743 (7th Cir. 1991); *Moothart v. Bell*, 21 F.3d 1499, 1506 (10th Cir. 1994); *Agosto v. Academia Sagrado Corazon*, 739 F. Supp. 2d 90, 99 (D.P.R. 2010) (citing *Kerkhof v. MCI WorldCom, Inc.*, 282 F.3d 44, 56 (1st Cir. 2002)); *Kascewicz v. Citibank, N.A.*, 837 F. Supp. 1312, 1322 (S.D.N.Y. 1993) (although prejudice "is not a prerequisite to an award of civil penalties," it is "one factor, albeit a significant one, out of the factors which district courts may consider in exercising their discretion whether to award penalties."); *see also Rodriguez v. Int'l Coll. of Bus.*, 364 F. Supp. 2d 40, 49 (D.P.R. 2005) ("A showing of prejudice or bad faith is not a prerequisite to the imposition of statutory penalties for failing to inform an employee of the right to continued coverage, but in the court's discretion, these factors may be given dispositive weight."); *Kelly v. Chase Manhattan Bank*, 717 F. Supp. 227, 233 (S.D.N.Y. 1989) ("[P]enalties will not be imposed on a plan administrator absent a showing by the plaintiff that he has suffered some degree of harm . . . .").

Given the difficulty of proving bad faith and prejudice, and the discretion inherent in even assessing statutory penalties, the plaintiff class's likelihood of success at trial was uncertain. *See Slipchenko*, 2013 WL 467798, at *17 ("At bottom, the penalty is discretionary and fact-specific."). The settlement agreement represents a fair, reasonable, and adequate compromise that takes into account the plaintiffs' likelihood of success at trial. Accordingly, this factor supports final approval.

### 5.   The Range of Possible Recovery and Certainty of Damages

This factor requires the district court to "establish the range of possible damages that could be recovered at trial and, then, by evaluating the likelihood of prevailing at trial and other relevant factors, determine whether the settlement is pegged at a point in the range that is fair to the plaintiff

settlors." *Maher v. Zapata Corp.*, 714 F.2d 436, 460 (5th Cir.1983) (internal quotation marks omitted) (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 213 (5th Cir. 1981)). The district court's consideration of this factor "can take into account the challenges to recovery at trial that could preclude the class from collecting altogether, or from only obtaining a small amount." *Klein*, 705 F. Supp. 2d at 656. The question is not whether the parties have reached "exactly the remedy they would have asked the Court to enter absent the settlement," but instead "whether the settlement's terms fall within a reasonable range of recovery, given the likelihood of the plaintiffs' success on the merits." *Id.* (quotations omitted).

Section 1132(c) allows courts to award up to $110 per day for each COBRA notice violation. Class counsel estimates this could have resulted in a class recovery as high as $3 million. (Docket Entry No. 172 (citing Bunch Decl. ¶ 5)). But as class counsel observes, this award requires a showing of bad faith and prejudice. Even then, the court retains discretion to award no statutory penalties at all. Due to the discretionary nature of awarding statutory penalties under § 1132(c), the class could have received anywhere between $0 and $110 per day of notice violation. *See Cole v. Trinity Health Corp.*, No. 14-1408, 2014 WL 7012371 (8th Cir. Sept. 8, 2014) (affirming district court's determination that plan participant was not entitled to statutory penalties, despite administrator's failure to comply with COBRA); *In re Interstate Bakeries Corp.*, 704 F.3d 528 (8th Cir. 2013) (same); *Kwan v. Andalex Grp. LLC*, 737 F.3d 834 (2d Cir. 2013) (same). Given this wide range of recovery, the difficulty of prevailing on the merits, and the discretion to award statutory penalties even in meritorious circumstances, the $375,000 settlement reflects a fair, reasonable, and adequate compromise. This settlement, which reflects an average per person recovery of over $5,000 for the 69 class members, is well within the range of what courts have awarded or approved

19

in other COBRA class actions.  *See Pierce v. Visteon Corp.*, No. 1:05-cv-01325-LJM-DKL, 2013
WL 3225832, at *21-22 (S.D. Ind. June 25, 2013) (surveying awards in COBRA cases, and
awarding statutory penalties totaling $2,500 per class members); *Hornsby v. Mason Cnty.
Greyhound Park*, No. 3:10-cv-680-MHT, 2013 WL 1747539, at *1 (M.D. Ala. April 23, 2013)
(approving settlement of COBRA class action involving 1,600 class members for $350,000, which
resulted in an average award of $200 per class member).  This factor supports final approval.

### 6.    The Opinions of Class Counsel, Class Representatives, and Absent Class Members about the Settlement

"The endorsement of class counsel is entitled to deference, especially in light of class
counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate
the merits of the claims." *DeHoyos*, 240 F.R.D. at 292; *see also Stott*, 277 F.R.D. at 346 ("As class
counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement,
'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'" (quoting
*Cotton*, 559 F.2d at 1330)).  But a court should not blindly defer to class counsel's opinion.  "Rather,
the Court must give class counsel's recommendations appropriate weight in light of all the factors
surrounding the settlement." *Turner*, 472 F. Supp. 2d at 852.

Class counsel have significant experience in employment class action litigation and have
endorsed the settlement after substantial arm's length negotiations.  Each of the class representatives
agrees that the settlement is a fair, adequate, and reasonable compromise.  (Docket Entry Nos. 168,
¶ 27; 169, ¶ 21; 170, ¶ 21).  There is no evidence that any absent class members disagree with the
settlement.  As discussed above, class counsel and the settlement administrator apprised the absent
class members of the settlement's terms and their right to object in the best manner practicable under
the circumstances.  Yet no class members objected during the notice period or at the final fairness

hearing.  *See In re Heartland*, 851 F. Supp. 2d at 1068 ("Receipt of few or no objections 'can be viewed as indicative of the adequacy of the settlement." (quoting *Newberg on Class Actions* § 1141)).  Thus, this sixth *Reed* factor favors approving the settlement.

### 7.    Result of the *Reed* Analysis

All six *Reed* factors favor approving the proposed settlement.  The court concludes that the settlement is fair, reasonable, and adequate under Rule 23(e).  The terms are approved.

### F.    The Plan of Allocation

The plan of allocation also merits approval.  "'A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.'" *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *23 (N.D. Tex. Nov. 8, 2005) (quoting *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 18, 1994)).  "'[A] class action settlement need not necessarily treat all class members equally.'" *Id.* (quoting *Cohen v. Resolution Trust Corp.*, 61 F.3d 725, 728 (9th Cir. 1995), *vacated on other grounds*, 72 F.3d 686 (9th Cir. 1996)).  "[D]isparate treatment of class members may be justified by a demonstration that the favored class members have different claims or greater damages." *Petruzzi's, Inc. v. Darling–Del. Co.*, 880 F.Supp. 292, 300–01 (M.D. Pa. 1995).  The plan at issue here is based primarily on the number of days that each class member did not receive various notices required under ERISA.  It looks to other relevant factors, described above, that seek to allocate the funds based on the extent of the class members' individual injuries.  These factors stem from the questionnaire sent to class members and information counsel "would have used at trial as evidence of prejudice" in seeking statutory penalties.  (Docket Entry No. 177, at 20).  The plan of allocation is a fair and equitable

method of allocating the proceeds of the settlement among the class members.[6]

### III.    The Motion for Approval of Service Awards

Class counsel ask the court to approve service awards totaling $12,000 for the three class representatives.    (Docket Entry No. 166).    "'Courts commonly permit payments to class representatives above those received in settlement by class members generally.'"  *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012) (quoting *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 870 (E.D. La. 2007)); *see also Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 367–68 (S.D. Miss. 2003).  "That does not mean, however, that incentive awards are always merited."  *In re Heartland*, 851 F. Supp. 2d at 1089.  "In deciding whether an incentive award is warranted, courts look to: (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the plaintiff expended in pursuing the litigation."  *Id.* (quotations omitted); *see also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. REV. 1303, 1310 (2006) (arguing that "incentive awards serve multiple goals": compensating representative plaintiffs for costs and superior service to the class).  These factors support approving the plaintiffs' proposed service awards.

First, the actions the class representatives took to protect the class interests were substantial. The class representatives faced risk in acting as the public face of the class.  *See Humphrey v. United Way of Tex. Gulf Coast*, 802 F. Supp. 2d 847, 868-69 (S.D. Tex. 2011) (listing among the factors courts consider in awarding incentive awards "(1) the risk to the class representative in commencing

---

[6]  The court addresses the proposed division of fees below.

suit, both financial and otherwise; [and] (2) the notoriety and personal difficulties encountered by the class representative").  Future employers may consider them less desirable than other applicants because they previously sued an employer.  *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (noting that service awards are especially appropriate in employment litigation in which "the plaintiff is often a former or current employee of the defendant and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"); *Beesley v. Int'l Paper Co.*, No. 3:06-cv-703-DRH-CJP, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) (approving incentive awards to each plaintiff in part because "ERISA litigation against an employee's current or former employer carries unique risks and fortitude, including alienation from employers or peers").  Slipchenko and Barton were unemployed and seeking employment at various times during the litigation.  They both testified that they believe their active involvement in this litigation negatively affected their employment opportunities.  (Docket Entry Nos. 168, ¶ 14; 170, ¶¶ 9-10).  The class representatives also risked paying litigation and other costs if their claims failed.  *See, e.g.*, *Stoffels v. SBC Communs., Inc.*, No. SA-05-cv-0233-XR, 2012 WL 2122191, at *2 (W.D. Tex. June 11, 2012) (imposing costs against plaintiffs in an ERISA class action even though they were initially successful at a liability trial).  Despite the risks, the class representatives each declined offers to settle their individual claims in favor of pursuing class-wide settlement.  (Docket Entry Nos. 168, ¶¶ 17; 169, ¶¶ 12, ¶¶ 12).

Second, the class has benefitted from the representatives' actions.  Those actions contributed to the $375,000 settlement offered to the class, representing an average per person recovery of over $5,000.  This appears to be among the largest, if not the largest, average per person recovery in a certified class action asserting COBRA claims.  *See Pierce v. Visteon Corp.*, No. 1:05-cv-01325-

23

LJM-DKL, 2013 WL 3225832, at *21 (S.D. Ind. June 25, 2013) (awarding each class member $2,500 in statutory damages and noting that the penalty award is "substantially more" than the per person amount awarded in other COBRA class actions).   Because ERISA's statutory penalty provision is subject to the court's decision on the appropriate award, the named plaintiffs had no assurance that there would be any damages awarded, much less a minimum amount.  *See* 29 U.S.C. § 1132(c)(1).  The defendants made no class settlement offers until the summer of 2014, more than three years after the case was filed.  The $375,000 settlement award—all of which will be paid out—is a substantial benefit for the class.

Third, the class representatives expended significant time and effort in pursuing the claims. In *In re Heartland*, this court denied the request for service awards for the representative plaintiffs because there "must be some evidence in the record demonstrating that the representative plaintiffs were involved" and there was "no evidence of such involvement, time or expenses."  851 F. Supp. 2d at 1090.  Not so here.  The named plaintiffs played a significant and active role throughout the litigation, and there is evidence of the time and expense they incurred.

Slipchenko began this lawsuit by retaining counsel after unsuccessfully seeking continuation coverage.  (Docket Entry No. 168, ¶¶ 5, 9, 11-12).  Slipchenko communicated regularly with counsel before and after suit was filed, providing documents and information.  (Docket Entry No. 168, ¶¶ 13-14).  The other two named plaintiffs, Boswell and Barton, provided information and documents to help counsel draft the amended and second amended complaints.  (Docket Entry Nos. 169, ¶ 9; 170, ¶ 9).

As the litigation proceeded, all three named plaintiffs communicated regularly with counsel, despite the fact that Boswell and Barton were working offshore or overseas.  (Docket Entry Nos.

169, ¶¶ 10-11, 13; 170, ¶¶ 11, 14, 16).  All three responded to discovery requests and interrogatories. (Docket Entry Nos. 168, ¶ 15; 169, ¶ 14; 170, ¶ 13).  They made themselves available for depositions, devoted time to prepare with class counsel, and spent significant time testifying during their depositions.  (Docket Entry No. 168, ¶¶ 15, 18, 21-22; 169, ¶ 13; 170, ¶¶ 14-16).  Slipchenko traveled from her home in Southern California to Houston for her deposition, which lasted more than ten hours over two days.  (Docket Entry No. 168, ¶ 18).  Boswell and Barton's depositions each lasted over three hours.  (Docket Entry Nos. 169, ¶ 13; 170, ¶ 13).  Slipchenko and Boswell participated in three mediation sessions, and all three participated in numerous settlement discussions.  (Docket Entry Nos. 168, ¶¶ 15-17, 23; 169, ¶¶ 11-12, 17; 170, ¶¶ 11-12, 17). In the months leading up to the September 2014 trial date, the class representatives assisted with trial preparation through telephone conferences and, in Barton's case, a seven-hour meeting during her leave from a job assignment in Angola.  (Docket Entry No. 170, ¶ 16).

Finally, the size of the service awards sought—$6,000 for Slipchenko, $4,000 for Boswell, and $2,000 for Barton—is supported by the evidence and well within the range courts have approved in similar cases.  *See, e.g.*, *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000) (approving $25,000 incentive wards to both named plaintiffs); *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 504 (N.D. Miss. 1996) (approving $10,000 incentive awards to each of the four named plaintiffs); *see also In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) ($5,000 incentive award to named plaintiffs); *In re McKesson HBOC Inc. ERISA Litig.*, 391 F. Supp. 2d 844, 851 (N.D. Cal. 2005) ($5,000 incentive award to named plaintiffs).

Courts recognize that "[a] differentiation among class representatives based upon the role that each played may be proper in given circumstances."  *In re Dun & Bradstreet Credit Servs.*

25

*Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990).  The proposed awards reflect the different

levels of time and effort each named plaintiff spent.  Slipchenko began the litigation and has spent

the most time and energy on it.  Boswell, who joined the lawsuit as a named plaintiff after

Slipchenko in the amended complaint, has also put forth significant time over the last three years.

Barton became a class representative after Slipchenko and Boswell, but has also invested significant

time and effort over the last two years.  The service awards for the three named plaintiffs

appropriately reflect the amount of time and effort each spent on the case.

In sum, the class representatives spent significant time and effort on the litigation, took steps

to protect the class interests, and helped obtain the class benefit.  The court grants the plaintiffs'

motion for payment of class service awards in the amounts of $6,000 for Slipchenko, $4,000 for

Boswell, and $2,000 for Barton.  (Docket Entry No. 166).

## IV.    The Motion for Approval of Attorney's Fees and Costs

Rule 23(h) authorizes a district court to "award reasonable attorney's fees and nontaxable

costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Courts,

including in the Fifth Circuit, "have encouraged litigants to resolve fee issues by agreement, if

possible."  *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322 (W.D. Tex. 2007) (citing cases,

including *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974)).  But "a district

court is not bound by the agreement of the parties as to the amount of attorneys' fees."  *Strong v.*

*BellSouth Telecomms., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998) (internal quotation marks omitted);

*see also* Fed. R. Civ. P. 23, advisory committee's notes to the 2003 Amendments, subdivision (h)

("The agreement by a settling party not to oppose a fee application up to a certain amount, for

example, is worthy of consideration, but the court remains responsible to determine a reasonable

fee.").

"In a class action settlement, the district court has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008). "In determining a fee for class counsel, the court's objective is to ensure an overall fee that is fair for counsel and equitable within the class." Fed. R. Civ. P. 23, advisory committee's notes to the 2003 Amendments, subdivision (h). "The district court's close scrutiny of fee awards serves to 'protect the nonparty members of the class from unjust or unfair settlements affecting their rights as well as to minimize conflicts that may arise between the attorney and the class, between the named plaintiffs and the absentees, and between various subclasses.'" *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 228 (quoting *Strong*, 137 F.3d at 849). Such scrutiny also "guards against the public perception that attorneys exploit the class action device to obtain large fees at the expense of the class." *Id.* (quoting *Strong*, 137 F.3d at 849). "To fulfill its duty, the district court must not cursorily approve the attorneys' fee provision of a class settlement or delegate that duty to the parties." *Id.* (quotation omitted). "Although exacting judicial review of fee applications may be burdensome, it is 'necessary to discharge the [court's] obligation to award fees that are reasonable and consistent with governing law.'" *Id.* (quoting MANUAL FOR COMPLEX LITIGATION § 14.231 (4th ed. 2004) ("MANUAL")).

Class counsel seek court approval of $624,999 in fees and costs, and Brunel agrees. (Docket Entry Nos. 157, 171, 172). Class counsel have explained that they arrived at these amounts using a lodestar analysis, cross-checked by the *Johnson* factors. According to the affidavits and billing invoices submitted by R. Joseph Barton of Cohen Milstein, who served as lead counsel, Monya M.

Bunch of Cohen Milstein, and Justin M. Campbell, III, of Campbell Harrison & Dagley, class counsel spent 3,600 hours on the case.  Under a lodestar approach, the fees would total over $1,705,000.  The requested award of $624,999 is roughly 36% of that lodestar.

## A.    Methodology

In common-fund cases—in which class counsel is compensated from the general fund used to pay class members' damages and claims—district courts generally award attorneys' fees using one of two methods:

> (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier.

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642–43 (5th Cir. 2012). Under the lodestar method as applied in this circuit, the upward or downward adjustment is based on the court's review of the factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d at 717–19. The twelve *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Dell*, 669 F.3d at 642 n.25.  "The *Johnson* factors are intended to ensure 'a reasonable fee.' " *Id.* (quoting *Johnson*).  In *Dell*, the Fifth Circuit confirmed that district courts have discretion to determine the proper fee award in common-fund cases by using either the percentage or lodestar methods, cross-checked with the *Johnson* factors.  *Id.* at 642–44.  The district court must show that

28

it "has utilized the *Johnson* framework as the basis of its analysis, has not proceeded in a summary fashion, and has arrived at an amount that can be said to be just compensation." *Dell*, 669 F.3d at 642 (quotation omitted).

Having two funds—one for the claimants, one for the attorneys—is a well-recognized variant of a common-fund arrangement. "'A variant on the traditional common-fund case occurs frequently in mass tort litigation—in both class actions and large consolidations—where a separate fund to pay attorney fees is created as a part of the settlement.'" *In re Heartland*, 851 F. Supp. 2d at 1072 (quoting MANUAL§ 14.11). Such an arrangement is sometimes called a "constructive common fund." *Id.* "If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and expenses, . . . the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel." *Id.* (quoting MANUAL § 21.7). Although "[m]any courts and commentators have concluded that the best approach is to use the percentage method in a common-fund or variant case with the lodestar method as a cross-check," the "lodestar method is most appropriate in cases with a statutory provision for fee-shifting." *Id.* at 1072-73 & n.25.

ERISA provides for fee-shifting in § 502(g), which recognizes that the court has discretion to award "reasonable costs to either party." *Hogan v. Kraft Foods*, 969 F.2d 142, 146 (5th Cir. 1992) (quoting 29 U.S.C. § 1132(g)(1)). Courts use a two-step analysis to evaluate the reasonableness of a fee request under § 502(g). *See Humphrey v. United Way of Texas Gulf Coast*, No. H-05-758, 2008 WL 5070057, at *3 (S.D. Tex. Nov. 20, 2008); *Johnson v. Prudential Ins. Co. of Am.*, No. H-06-0130, 2008 WL 901526, at *6 (S.D. Tex. Mar. 31, 2008).

In the first step, a court determines whether a party is entitled to an award by examining the

factors set forth in *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980).

They are:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Id.* at 1266 (footnote omitted).  Each of the *Bowen* factors is present here:  (1) the court has already determined that the defendants were culpable in failing to provide COBRA coverage, *see Slipchenko*, 2013 WL 4677918, at *18; (2) the defendants are able to pay and in the settlement agreement  promised to pay these fees; (3) the award would deter other employers from declining to provide COBRA coverage; (4) the plaintiffs will be benefitting all plan participants; and (5) the plaintiffs' claims had merit, as demonstrated by this court's grant of summary judgment on certain liability issues.

In the second step under § 502(g), a court applies the lodestar method to determine the amount and then adjusts upward or downward based on the applicable *Johnson* factors, including the benefit the litigation provided, and using the percentage of fund approach as a cross-check. *Prudential*, 2008 WL 901526, at *6; *see also Dell*, 669 F.3d at 644.

## B.    Calculating the Lodestar

### 1.    The Hours Spent

Class counsel have been litigating this case for over three years.  The parties engaged in a significant amount of discovery.  Class counsel briefed vigorously opposed motions for class certification and summary judgment. (Docket Entry Nos. 54; 60; 61; 71; 78; 80; 174, ¶¶ 3-4).  Class

counsel also spent significant time preparing for the September 8, 2014 docket call.  (Docket Entry No. 173, ¶ 19).  In *Hornsby v. Macon County Greyhound Park, Inc.*, No. 3:10-cv-680-MHT, 2013 WL 1747539, at *3 (M.D. Ala. April 23, 2013), a court found that class counsel's expenditure of 3,400 hours in litigating a COBRA case to settlement *before class certification* was reasonable.  *See id.*  Here, class counsel not only successfully achieved certification but also partial summary judgment and had to spend significant time conducting discovery and preparing for trial before the parties settled.  As a general matter, spending 3,645.60 hours was reasonable.

The specific billing records confirm that the great majority of the time submitted is for a reasonable number of hours, given the issues in the case, the legal tasks performed, and the experience and expertise of the lawyers performing those tasks.  That is, the records show that class counsel have used appropriate staffing and billing judgment.  "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant."  *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (per curiam). When appropriate, out-of-state counsel assigned work to attorneys with lower billing rates, avoided duplication of work, and reduced unnecessary expenditures by relying on Houston counsel and seeking leave to appear in court by telephone.  (Docket Entry No. 173, ¶ 29).  One associate, Monya Bunch, performed nearly half the work (roughly 1,570 hours), avoiding the higher hourly fee the partners would charge.  (Docket Entry No. 173, Ex. E).  Class counsel have removed many time entries for administrative tasks.  (Docket Entry Nos. 173, Ex. F; 175, ¶ 9).  Class counsel has also reduced the billing rate for one of its partners, Ms. Handorf, for time she worked on the case while serving as of counsel to the firm because some of that work could have been performed by an associate at a lower hourly rate.  (Docket Entry No. 173, ¶ 31; Ex. E).  This last adjustment reduced

the lodestar by $200,000.  (Docket Entry No. 173, ¶ 31).  Additionally, class counsel wrote off roughly 15 hours in travel time for both Ms. Bunch and Ms. Handorf.  (*Id.*).  Finally, class counsel reduced one paralegal's time entries by 50% to avoid submitting excessive time for certain projects.  (*Id.*; Ex. E).  The type and amount of legal work required and the evidence of staffing and billing judgment further demonstrates the reasonableness of the number of hours spent.

### 2.    The Hourly Rates

"An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates, and the rate is not contested."  *In re Heartland*, 851 F. Supp. 2d at 1087 (citation omitted) (finding reasonable rates ranging from $90/hour for paralegal work to $825/hour for co-lead class counsel).  An "accepted method of compensating for a long delay in paying for attorneys' services is to use their current billing rates in calculating the lodestar."  *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 763 (S.D. Tex. 2008).

Class counsel seek reimbursement of attorney's fees at the current hourly rates customarily billed to fee-paying clients.  (Docket Entry No. 173, ¶ 28; 175, ¶ 8).  Campbell Harrison & Dagley's current rates—ranging from $100 to $600 per hour—are well within the prevailing market rate in the Houston legal community.  Cohen Milstein's billing rates—ranging from $240-$260 for paralegals, $415-$530 for associates, and $635-$775 for partners—are generally comparable to the rates charged by the Texas-based defense counsel in this action.  (Docket Entry No. 174, Ex. A) For example, Bracewell & Guiliani rates range from $275-$700 for associates and $575-$1,125 for partners.  (*Id.*).  Courts have regularly approved Cohen Milstein's associate and partner rates for representing plaintiffs in class action litigation, including litigation less complex than ERISA claims

32

tend to be.  *See, e.g.*, *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009) (approving as reasonable rates ranging from $440 to $775 for partners and $295 to $525 for associates at Cohen Milstein); *Chesemore v. Alliance Holdings, Inc.*, No. 09-cv-413-WMC, 2014 WL 4415919, at *6 (W.D. Wis. Sept. 5, 2014) (finding 2014 "hourly rates ranging from $395 (for lower-level associates) to $895 (for highest-level partners)" to be reasonable).  Cohen Milstein's legal assistant hourly rates, which range from $240 to $260, are closer to lower-level associate rates at many national law firms than to legal assistant rates.  That said, class counsel's reduction of the lodestar by more than 50% from $1,705,971.25 to $624,999.00 adjusts for the higher rates.  And as the table class counsel submitted shows, even if Cohen Milstein used Campbell Harrison & Dagley's lower legal assistant rates, its lodestar would still be $860,200, which is significantly higher than the award sought.  (Docket Entry No. 173-9 at 2).

### C.    The Applicable *Johnson* Factors

#### 1.    Time and Labor Involved

The time and labor reasonably required and actually spent for class counsel to litigate this case were substantial.  Since filing suit in 2011, class counsel have engaged in significant discovery, obtained—over vigorous and competent opposition—class certification and partial summary judgment; implemented class notice; prepared for trial; and engaged in what ultimately proved successful settlement negotiations, including mediation.  The first *Johnson* factor supports the requested award.

#### 2.    Novelty and Difficulty of the Issues

Few class claims have been filed under ERISA's COBRA provisions and fewer have been certified over opposition  *See* COBRA Handbook § 8.07[A][2] (noting that only a few courts have

considered whether to certify COBRA cases as class actions and reporting that most have denied certification).  As noted, this appears to be only the third certified COBRA class action.  *See Hornsby v. Macon Cty. Greyhound Park*, No. 3:10-cv-680-MHT, 2013 WL 1747539, at *2-3 (M.D. Ala. Oct. 23, 2013) (certifying similar COBRA class); *Pierce v. Visteon Corp.*, 2006 WL 6667384, at *2, *5 (S.D. Ind. Sept. 14, 2006) (certifying a class of beneficiaries of group and medical dental plans "who were entitled to be provided notice of their COBRA rights due to a qualifying event" but "were not provided said notice in a timely fashion").

In addition to the certification uncertainty, class counsel faced considerable uncertainty as to whether the court would award statutory penalties under § 1132(c) and, if so, in what amount. *See Slipchenko*, 2013 WL 4677918, at *11 ("The statutory provision at issue, § 1132(c), leaves the decisions whether to impose a penalty and, if so, how much, to the court's discretion.").  Although the plaintiff class could have received as much as $3 million in statutory penalties, they also could have received nothing, given the difficulty in establishing the defendants' bad faith and prejudice to class members.  Class counsel took the case on a contingency basis with no assurance "of a paycheck."  *Florin v. Nationsbank of Georgia, N.A.*, 60 F.3d 1245, 1247 (7th Cir. 1995).  The second *Johnson* factor supports the requested award.

### 3.   The Skill Required to Perform the Legal Service Properly

As class counsel observe, (Docket Entry No. 172 at 21-22), this factor is related to the novelty and difficulty of the issues as well as the experience and ability of class counsel.  Given the complexity of COBRA claims and the small number certified as class actions, representing the plaintiff class required skill.  Cohen Milstein and Campbell Harrison & Dagley could, and did, "fairly and adequately represent the class," *Slipchenko*, 2013 WL 4677918, at *15, demonstrating

34

the necessary skill to conduct the litigation effectively and well.  Other courts have reached similar conclusions.  (Docket Entry No. 173, ¶¶ 3-8; Ex. A (describing Cohen Milstein's reputation for providing excellent representation to plaintiffs in ERISA class actions)); (Docket Entry No. 174, ¶¶ 3-6 (describing Campbell Harrison & Dagley's extensive experience)); *Boos v. AT&T, Inc.*, 704 F. Supp. 2d 600, 612 n.13 (W.D. Tex. 2010), *aff'd sub nom. Boos v. AT&T, Inc.*, 643 F.3d 127 (5th Cir. 2011) (commenting that Cohen Milstein, in an ERISA case led by Joseph Barton, "presented a cogent argument, well supported by facts and legal authority, in an area repeatedly referred to as complex and difficult").  The third *Johnson* factor supports the requested award.

### 4.     The Preclusion of Other Employment

By accepting this case, class counsel necessarily limited their ability to work on other cases. Four of Cohen Milstein's  seven-lawyer Employee Benefits Practice Group spent more than 50 hours on this case.  This factor supports the fee request.

### 5.     A Customary Fee for Similar Work in the Community

Class counsel agreed to advance litigation expenses and take this representation on contingency.  (Docket Entry Nos. 173, ¶ 26; 174, ¶ 7).  The representative plaintiffs agreed that if they prevailed, class counsel would seek a fee through a common-fund recovery, statutory fee-shifting, or some combination of the two, a customary arrangement in employee-benefit class actions.  (Docket Entry No. 173, ¶ 26).  A straight lodestar award is more than class counsel seeks under the common-fund approach.  Brunel agreed to pay $624,999 to settle the attorney's fees claims, including claims under § 502(g).  (Docket Entry No. 173, ¶ 22 ("Class Counsel informed Counsel for Defendants during the settlement negotiations that Plaintiffs were entitled to and would seek an award of attorney's fees under § 502(g) if necessary.")).  The parties used class counsel's

customary hourly rate in their negotiations.  (Docket Entry No. 173, ¶ 22 ("Class Counsel also provided Defendants with an estimate of their fees and costs incurred in the litigation.")).  This factor is neutral.

### 6.      Whether the Fee is Fixed or Contingent

Class counsel took this case on contingency.  The typical contingency fee arrangement would yield a fraction of the fees Brunel has agreed to pay.  The fact that defense counsel will pay the fee rather than have it deducted from the amount the plaintiff class receives, plus the ERISA fee-shifting provision, make this difference appropriate.  *See Haggart v. United States*, 116 Fed. Cl. 131, 144 (Fed. Cl. 2014) (observing that the purpose of statutory fee-shifting provisions is "to directly, not proportionately, relieve the burden on plaintiffs to pay their lawyers out of the compensation received").  This factor is neutral.

### 7.      The Time Limitations Imposed by the Client or the Circumstances

This "case did not present any particular time limitations imposed either by the client or the circumstances."  (Docket Entry No. 172 at 24).  This factor does not apply.

### 8.      Amount Involved and the Results Obtained

The "most critical factor in determining the reasonableness of a fee award is the degree of success obtained."  *In re Heartland*, 851 F. Supp. 2d at 1085 (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1995); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)).  Class counsel negotiated a $375,000 settlement for the plaintiff class, which computes to an average award of $5,000 per class member and a minimum of $100 per class member.  As noted above, class members will not need to make affirmative claims on the fund.  Instead, they will be issued award checks based on a formula considering the number of days that each did not receive notice along with

several additional factors.  This case thus presents no issue of having to estimate the value of the money that will be delivered to class members.  The class members and their locations are known and the settlement funds can be delivered to them with relative ease.  *Cf. Pearson v. NBTY, Inc.*, Nos. 14-1198, 14-1227, 14-1245, 14-1385, — F.3d —, 2014 WL 6466128, at *3 (7th Cir. Nov. 19, 2014) (reversing an attorney's fees award under nationwide consumer class action settlement where the class received a fraction of the nominal settlement value because very few opted in and there was "no fund . . . no litigated judgment, and there was no reasonable expectation in advance of the deadline for filing claims that more members of the class would submit claims than did").[7]

Although the class could have obtained substantially more in statutory penalties had they proceeded to trial, they also could have received nothing because the penalty provisions require proof of bad faith and prejudice and are subject to the court's discretion, and any payment would have been delayed, potentially for years.  *See Slipchenko*, 2013 WL 4677918, at *11-12 (observing that "[a] primary factor for statutory penalties is whether the employer acted in bad faith" and that that the inquiry also turns "in part on whether individual class members were prejudiced"); (Docket Entry No. 156, at 6-8 (discussing awards in prior COBRA cases)).  Given the difficulty of establishing bad faith and prejudice on a class-wide basis to obtain discretionary relief, and the fact that the payment will be within the next few months as opposed to sometime in the next few years,

---

[7] Similarly, the percentage relationship between the fees and the fund—which will be delivered in its entirety—also presents none of the issues in *Pearson*.  Unlike the localized employment class action here, *Pearson* dealt with a nationwide "consumer class action[], where the percentage of class members who file claims is often quite low (in [that] case it was 30,245 ÷ 12 million = .0025, or one quarter of one percent)," and where it is "especially" important to apply a "presumption . . . that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson*, 2014 WL 6466128, at *4.

the negotiated settlement award presents a positive result for each class member. *See Hornsby*, 2013 WL 1747539, at *3 (approving attorney's fees of over $900,000 when each class member in a similar suit received $1,331.45 in settlement). This factor supports the requested award.

### 9. The Experience, Reputation, and Ability of the Attorneys

As discussed above, this *Johnson* factor supports the requested award.

### 10. The Undesirability of the Case

This factor relates to the novelty and difficulty of the issues. As noted above, when class counsel took on this case, very few COBRA class actions had been certified, and obtaining statutory penalties is both difficult and subject to the court's discretion. Although certain liability issues were relatively clear, other factors made the case risky and therefore undesirable. This factor supports the requested award.

### 11. The Nature and Length of the Professional Relationship with the Client

Class counsel communicated regularly with each class representative throughout the case even though Barton and Boswell were often working offshore or overseas. (Docket Entry No. 174, ¶¶ 12-13). When an inadequate number of class members responded to the first notices sent to the class, counsel attempted to contact every class member. In addition to the extensive and difficult motion practice and other discovery work, class counsel litigated the extent of discovery on the absent class members and prepared and presented the named plaintiffs for their depositions. Finally, class counsel mediated the case and negotiated what ultimately proved to be a settlement agreement. *Cf. In re Heartland*, 851 F. Supp. 2d at 1086 (finding this factor to support a negative adjustment where there was no "record evidence showing [communication beyond class notice] between class counsel and [plaintiffs], or any class members"). This factor supports the requested award.

### 12.      Awards in Similar Cases

Relatively few COBRA class actions have achieved successful results for plaintiff classes. In *Hornsby*, however, the plaintiffs sued based on failure to provide COBRA notice and payment of reduced premiums under ARRA.  Before class certification or findings of liability, the parties reached a settlement under which the defendants agreed to pay $350,000 to class members and another $950,000 in attorney's fees and costs.  *Hornsby*, 3:10-cv-00680-MHT-SRW, ECF No. 188 (M.D. Ala. Oct. 23, 2012).  Each class member would receive $1,331.45 with a $2,200 enhancement award for the class representatives.  *Hornsby*, 2013 WL 1747539, at *3.  The court found that the requested $917,957.41 award of attorney's fees was "reasonable in light of the successful results achieved . . ., the monetary benefits obtained . . ., [and] the substantial risk associated" with the case. *Id.*  The requested fees here are clearly reasonable compared with the award approved in *Hornsby*. This factor supports the requested fee award.

In sum, the *Johnson* factors support the requested award and the grant of the motion for attorney's fees. (Docket Entry No. 171).

### D.      Division of Fees

The court has an "independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that the attorney's fees are . . . divided up fairly among plaintiffs' counsel." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227.  Under class counsel's proposed division of fees, lead counsel Cohen Milstein would receive $480,834.23 in fees and $64,069.21 in costs, whereas liaison counsel Campbell, Harrison & Dagley would receive $75,000 in fees and $5,095.56 in costs.  Both counsel agree that this is a fair and reasonable division of fees and costs in light of their respective role and hours expended.  The court agrees.  The proposed

division of fees is "factually supportable and consistent with the *Johnson* factors." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 230.  The proposed division of fees is approved.

## V.      Conclusion

The court grants the plaintiffs' motions for final approval of: (1) the proposed settlement, plan of allocation, and division of fees, (Docket Entry No. 176); (2) service awards totaling $12,000, (Docket Entry No. 166); and (3) attorneys' fees and costs in the amount of  $624,999 (plus interest accrued), (Docket Entry No. 171).  An order granting final approval is separately entered.

SIGNED on January 23, 2015, at Houston, Texas.

                                                        Lee H. Rosenthal
                                              United States District Judge

40